# BLACKFORD *v.* WILDER.

---

PATENTS; INTERFERENCES; PATENTABILITY; RES JUDICATA; ESTOPPEL BY JUDGMENT.

1. In an interference proceeding, wherein one of the parties, who was unsuccessful in a former interference, upon the case going back to the Patent Office made amended and broader claims and was successful there in another interference then declared, the patentability of the new claims cannot be considered by this court, even though they seem rather inconsistent with the views apparently controlling the earlier proceedings in the Patent Office and the position then assumed by such party.

2. When a second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented and determined in the first action; but when the second suit is upon a different cause of action, though between the same parties, the judgment in the former action operates as an estoppel only as to the point or question actually litigated and determined, and not as to other matters which might have been litigated and determined.

3. The doctrine of *res judicata,* or estoppel by former judgment, applies to adjudications made in the Patent Office (following *Re Barratt,* 14

App. D. C. 255, and *Re Fay*, 15 App. D. C. 515) ; and this is especially true of interference cases, in view of rules 127 and 132 of the Patent Office.

4. An interference in fact, like the question of the validity of two patents issued to the same party, depends chiefly upon the subject-matter disclosed, and not merely upon the language of the respective claims. (Citing *Porter* v. *Louden*, 7 App. D. C. 64.)

5. In an interference case between B. and W. on an appeal by B. from the Commissioner of Patents, there was an award of priority to B. by this court, on the ground that an exhibit by W. the construction of which it was claimed by him amounted to a reduction to practice, lacked a certain part necessary to make the device embody the invention of the issue. The Patent Office thereupon allowed W. to make amended and broader claims, declared another interference between the same parties, and awarded priority to W. on his showing that the exhibit, when constructed and first offered for inspection in the Patent Office, contained the missing part. On a second appeal by B., this court, reversing the Commissioner, *held* that the former decision of this court was conclusive, and W.'s rights were terminated by it, he having had the right to make the broader claims, and to introduce all of his evidence relating to the exhibit, in the first proceeding.

No. 398. Patent Appeals. Submitted November 23, 1906. Decided January 8, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Philip Mauro* and *Mr. A. S. Pattison* for the appellant.

*Messrs. Spear, Middleton, Donaldson, & Spear* and *Mr. C. H. Duell* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is the second interference between the same parties [Atwell J. Blackford and William H. Wilder], declared on the same application.

The issue of the first was defined in four counts as follows:

"1. In a burner the combination with a trough and perforated tubes situated thereabove and forming a combustion chamber, said trough having at its bottom a liquid-containing portion, and an enlarged upper vapor-receiving space, and a vertically disposed lighting member seated in the liquid-containing portion and extending upward between the walls of the enlarged vapor-receiving portion to form a vapor space at the side of the lighting member.

"2. In a burner the combination of a trough and perforated tubes situated thereabove and forming a combustion chamber, a lighting member vertically disposed between the upwardly disposed walls of the trough, said trough having a contracted lower portion in which the lighting member is seated, and a vapor space above the contracted portion at the side of the vertically disposed lighting member.

"3. In a burner the combination of a trough and perforated tubes situated thereabove and forming a combustion chamber, said trough being contracted at its lower portion, and a vertically disposed lighting member seated in said contracted portion and extending upward between the upwardly disposed walls and constituting a vapor space in the upper portion of the trough at the side of the said lighting member.

"4. In a burner the combination of a trough and perforated tubes situated thereabove and forming a combustion chamber, said trough being contracted at its lower portion, and being provided with a wick seated in the contracted portion of the trough and extending upwardly between and distant from its upwardly disposed walls."

The original applications contained numerous claims, and were met from time to time with suggestions of amendments, rejections on references, and so forth, in the ordinary course of procedure. The examiner finally suggested that the broadest allowable subject-matter of the invention consisted: "In a burner, the combination of a trough and perforated tubes seated thereon forming a combustion chamber, said trough being contracted at its lower portion, and being provided with a wick seat-

ed in the contracted portion of the trough and extending upward·
ly between and distant from its upwardly disposed walls."
This· suggestion developed into the issue of the interference
thereafter declared.    The Examiner of Interferences and the
majority of the Examiners-in-Chief decided the question of pri-
ority in favor of Blackford.    The Commissioner made the final
award of priority to Wilder.    On appeal to this court that de-
·cision was reversed, and priority awarded to Blackford.
*Blackford* v. *Wilder,* 21 App. D. C. 1.

The issue turned, mainly, upon the point whether Wilder's
"exhibit E" showed the invention of the issue, and as such had
been reduced to practice.    This exhibit had passed through the
Patent Office, and had been produced in this court on the hearing
of the appeal.    It had no lighting member in it, and attempt
was made by Wilder, on a motion for rehearing, to introduce af-
fidavits to show that it had, when presented in the Patent Of-
fice and considered by the several tribunals therein, a thin,
vertical asbestos lighting member or kindler, answering the re-
·quirements of the issue.    It appearing to the court, from the .
recitals in the decisions of the Examiners-in-Chief and the Com-
missioner, that the lighter was not in the exhibit when considered
by them, the motion was denied.    21 App. D. C. 11, 16.

In coming to their conclusion, in the first case, the majority
of the Examiners-in-Chief were of the opinion that the issue was
·"very specific;" and there was general concurrence in the fact
that the subject-matter of the invention was a narrow one.    In
view of the preliminary proceedings in the Office, culminating
in the communication of the Primary Examiner, before quoted,
the conclusion was natural.    As recited in the opinion [p. 9]
on the former appeal:    "In Blackford's answer to some of the
objections of the Primary Examiner, on May 2, 1898, he asked
reconsideration on the ground of the combination of the V-
shaped burner with his new form of wick; and this it was, he
claimed, that enabled him to accomplish what former .patented
devises would not do."    He was finally informed on September
12, 1899, of the view of the Office in respect of patentability, as
before stated.

Even in the narrow form, Wilder denied patentability, and moved the Examiners-in-Chief to report to the Commissioner, under rule 126, that there was no patentable novelty in the issue. The Examiners, believing the issue, as defined, patentable, refused to make the suggestion. One of the Examiners-in-Chief, who dissented from the decision of the others as to priority, took a somewhat different view of the extent of the issue. He said: "This issue is broader than it is stated to be by my associates, and it is satisfied by any liquid-holding trough which is not filled by the wick at its upper portion, and which is restricted at its lower portion so as to limit the evaporating surface of the contained oil to approximately the requirements of combustion. It is immaterial whether or not the evaporation takes place from the surface of the oil or from the surface of the wick, or from both, as long as the surface which sustains the oil is duly limited in its area, and operates to expose to the heat of the flame only relatively small surface of oil. An examination of the records of both parties show that this is the breadth of the invention to which the interfering claims were intended to and do apply. Viewed in this light, said claims and the corresponding counts of the issue are distinctly applicable to Wilder's exhibit E." The Commissioner, who reversed the decision of the Examiners-in-Chief, said: "Exhibit E consists of a V-shaped trough essentially like that shown in Blackford's application. If the ordinary lighting member shown in the other exhibits is placed in this trough and the ordinary combustion tubes are used above, every element of the issue is present. There is no question but that the combustion tubes were intended to be, and were in fact, used with it, but a question is raised as to the lighting member. There is no lighting member in the exhibit now, and the testimony upon that point is not very full, but it is obvious upon mere inspection that there must have been a lighting member when the device was used, for it is well understood by those familiar with this art that a lighting member is necessary to start the operation of a burner of this kind." The different views upon this point were considered by the court, and that of the majority of the Board of Examiners-in-Chief was adopted. When

the final decision was certified to the Commissioner, Wilder presented amended claims not specifically limited to the lighting member and the V-shaped trough of the original interference, but drawn, nevertheless, on his same exhibit E, and requested an interference thereon with Blackford. Further proceedings resulted in the present interference with an issue defined as follows:

"1. In an oil burner the combination with an oil-holding trough having a contracted lower part and an enlarged upper part, the lower part of the trough being adapted to contain a body or column of oil when in normal operation, and the upper part forming a vaporizing chamber to vaporize the oil from its free surface, and means located in the trough for igniting or starting the vaporization of the oil, of perforated combustion tubes forming an uninterrupted continuation of the vapor chamber and adapted to cause the vapors arising from the surface of the oil to burn with a blue flame by admixture with the air.

"2. In an oil burner the combination with an oil-holding trough, the lower part of the trough being adapted to contain a body or column of oil when in normal operation, and the upper part forming a vaporizing chamber to vaporize the oil from its free surface, and means located in the trough for igniting or starting the vaporization of the oil, of perforated combustion tubes forming an uninterrupted continuation of the vapor chamber and adapted to cause the vapors arising from the surface of the oil to burn with a blue flame by admixture with the air."

Blackford moved to dissolve the interference, the chief ground, stated in different forms, being that the subject-matter of the second interference was *res judicata;* that is to say, was embraced in and concluded by the judgment of this court in the former appeal. This motion was denied by the Primary Examiner to whom it had been referred, in a lengthy decision; and his conclusion was adopted in turn by all of the tribunals of the Patent Office.

It was conceded that the doctrine of *res judicata* applies to proceedings in the Patent Office to the same extent as in the courts. The parties being the same, the ground of the decision

was, necessarily, that the subject-matter was different, and is thus stated in the Examiner's decision:

"The issues of this interference differ from the issues of the former interference in that they are not limited to any specific form of lighting device. Neither are they limited to any lighting member being seated in the contracted portion of the trough, nor are they limited to a lighting member seated in the contracted portion of the trough and extending upwardly so as to allow a vapor space above the contracted portion of the trough on either or both sides of said lighting member.

"The issues of the present interference are further distinguished from the former interference in that they are limited to 'perforated combustion tubes *forming an uninterrupted continuation of the vapor chamber.*'

"The limitation is material, and was for the purpose of differentiating the contestant's structure from patent to Stacey, 473,858. Said patent discloses a trough covered by a perforated cap 9, which tends to prevent the vaporization of the oil from its free surface in the manner contemplated by the issues.

"Further than this, the second count of the issue is differentiated from the matter of the former interference in that it is not limited to a trough having a lower *contracted portion,* which was one of the essential qualifications of the issues in the other interference.

"From this it appears that the present issues cover an entirely different structure from the structures which were held to be within the scope of the issues of the former interference, and it is believed that they involve separate and distinctive inventive subject-matter."

The conclusion in respect of the patentability of the broader claims of the present issue seems rather inconsistent with the views apparently controlling the earlier proceedings in the Patent Office on each of the applications, as well as with the view of Wilder himself, who, as has been seen, formerly denied the patentability of the narrower issue of the first interference. The patentability of the present issue, however, is not a question involved in this proceeding. Assuming patentability,

therefore, the question to be determined is whether, in view of
the former proceedings in the Office culminating in the first
declaration of interference between these same applications,
and the final decision therein in favor of Blackford, Wilder
is now deprived of the right to go back and amend by inserting
broader claims dominating those that were by that decision
awarded to Blackford. In other words, Is Wilder's right to
make the amended claims and maintain the present interfer-
ence thereon concluded by the former adjudication?

The doctrine of *res judicata,* or estoppel by former judgment,
has been thus declared by the Supreme Court of the United
States: "When the second suit is upon the same cause of ac-
tion and between the same parties as the first, the judgment in
the former is conclusive in the latter as to every question which
was or might have been presented and determined in the first
action; but when the second suit is upon a different cause of
action, though between the same parties, the judgment in the
former action operates as an estoppel only as to the point or
question actually litigated and determined, and not as to other
matters which might have been litigated and determined."
*Nesbit* v. *Independent District,* 144 U. S. 610, 618, 36 L. ed.
562, 565, 12 Sup. Ct. Rep. 746; *New Orleans* v. *Citizens'*
*Bank,* 167 U. S. 371, 386, 42 L. ed. 202, 207, 17 Sup. Ct. Rep.
905; *Southern P. R. Co.* v. *United States,* 168 U. S. 1, 48, 42
L. ed. 355, 376, 18 Sup. Ct. Rep. 18.

The same rule applies to adjudications made in the Patent
Office. *Re Barratt,* 14 App. D. C. 255, 257; *Re Fay,* 15 App.
D. C. 515, 517. It is also declared in Patent Office rule 127,
that "a second interference will not be declared upon a new
application for the same invention filed by either party." It is
further provided in rule 132, that whenever an award of priority
has been rendered in an interference proceeding by any tri-
bunal, and the limit of appeal therefrom has expired, the Pri-
mary Examiner shall advise the defeated party that the claims
so involved in the issue stand finally rejected. In interpret-
ing this rule (A. D. 1891) Mr. Commissioner Mitchell held that
the Examiner, after rejecting all claims which are or could be

made by the prevailing party, may properly allow to the defeated party such other claims as are held to be patentable and which could not be made by the prevailing party; and that no claim should be allowed to the defeated party which could by any latitude of construction be held to embrace matter common to the structure of both parties to the interference.  56 Off. Gaz. 141.

In *Corry & Barker* v. *Trout* v. *McDermott,* 110 Off. Gaz. 306 (C. D. 1904, p. 144), Mr. Commissioner Allen reversed a decision of the Primary Examiner refusing dissolution of a second interference between the same parties.  In doing so he said:  "The prior interference included the applications now involved, and the claim in controversy was drawn to the same structure as that now claimed.  Corry and Barker contend that the present issue is not substantially different from that in the first interference, and Trout admits that they differ merely in scope.  Trout, however, argues that the present issue, being broader than the first, cannot be regarded as substantially the same, and that it cannot be assumed that he will be unable to prove priority of invention on this issue merely because he failed on the specific issue.  The declaration of a second interference between the same applications should be necessary only in rare cases and under very exceptional circumstances.  It should not ordinarily be declared upon claims to the same device and differing from the first issue merely in scope.  If a mere change in the scope of claims were considered good ground for a second interference, the number of successive interferences between the same parties would be practically unlimited, and the interference procedure would become an intolerable burden to applicants.  The Office is justified in taking the decision as to priority of invention as prima facie evidence that the successful party was the first inventor not merely of the particular issue in controversy, but of the invention common to the two cases, whether more broadly or more specifically stated.  The burden is upon the defeated party to show special circumstances of the particular case which make it improper to apply the decision to the other claims presented.  It is not sufficient that

the claims differ, and that it is theoretically possible for one party to be prior inventor as to the first, and the other party prior inventor as to the second, for this would apply in all cases where the claims are not identical. To justify a second interference, there must be some exceptional circumstances, such as were presented in *Sarfert* v. *Meyer,* 76 M. S. 410, where the decision in the first interference was in favor of Sarfert upon the specific issue; but it appeared from the findings of fact that Meyer was the first inventor of the broad invention common to the two cases." See also *Phelps* v. *Wormley,* 118 Off. Gaz. 1069, 1070; *Ex parte Neiswanger,* 50 Off. Gaz. 1132, C. D. 1890, pp. 37, 38.

The foregoing decision is in substantial accord with the long-established doctrine of the Patent Office, that an interference in fact depends chiefly upon the subject-matter disclosed, and not merely upon the language of the respective claims. *Drawbaugh* v. *Blake* v. *Edison,* 30 Off. Gaz. 259, C. D. 1885, pp. 7, 11.. In that case Mr. Commissioner Butterworth said: "I have no doubt about the correctness of the rule laid down in *Ex parte Upton,* 27 Off. Gaz. 99. It is the substance of things, and not the shadow, with which we deal." *Gray* v. *Robertson,* 50 Off. Gaz. 165, C. D. 1885, p. 1; *Bissell* v. *Robert,* 51 Off. Gaz. 1618, C. D. 1885, p. 77. See also *Miller* v. *Eagle Mfg. Co.* 151 U. S. 186, 198, 38 L. ed. 121, 127, 14 Sup. Ct. Rep. 310. In that case the question was as to the validity of two patents to the same party. The drawings in each patent were identical, and the specifications in each substantially the same, but the first patent covered both the lifting and depressing actions of the machine, while the second was limited to the lifting effect only. The second patent was held to be void. Mr. Justice Jackson, who delivered the opinion of the court, said: "The result of the foregoing and other authorities is that no patent can issue for an invention actually covered by a former patent, —especially to the same patentee,—although the terms of the claims may differ; that the second patent, although containing a broader claim more general in its character than the specific claims contained in the prior patent, is also void; but that

where the second patent covers matter described in the prior patent, essentially distinct and separable from the invention covered thereby and claims made thereunder, its validity may be sustained. . . . It is settled, also, that an inventor may make a new improvement on his own invention of a patentable character, for which he may obtain a separate patent, and the cases cited by the appellee come to this point, and to this point only, that a later patent may be granted where the invention is clearly distinct from, and independent of, one previously patented." *Porter* v. *Louden,* 7 App. D. C. 64, 69.

It remains to apply the foregoing principles to the facts of this case, which are substantially these: The applications of the two interferences are the same: The issue of each reads "on Wilder's original exhibit E, and Blackford's exhibit D." It was on exhibit E, and the evidence relating to its several parts, time of construction and operation, that Wilder's right to priority was founded and determined in each case. That exhibit when produced before the Examiners-in-Chief, the Commissioner, and this court, in the hearing of the first interference, did not show the wick of the issue therein involved, and Wilder was denied the right to introduce additional evidence tending to show that the wick was in the device when constructed and when offered for inspection in the Patent Office. He was confined to the evidence contained in the record. When the decision awarding priority to Blackford was certified to the Commissioner, Wilder presented the broader claims, and secured the declaration of a second interference with Blackford, supporting his claim to priority with his same exhibit E and some additional evidence tending to show that the wick of the former issue was contained in it when constructed. The decisions of the several tribunals of the Patent Office in favor of Wilder were founded upon this exhibit and evidence, as appears from the following extracts:

(1) From decision of Examiner of Interferences:

"Wilder's exhibit E was, in the prior case, held by the Board of Examiners-in-Chief and by the court of appeals to be a fatal

defect. It is now satisfactorily established that this element was present when the device was tested in 1896, and also when it was filed as an exhibit in the first interference. A corresponding part has now been added to this exhibit, and the part which became misplaced has been recovered and filed as a separate exhibit, 'Wilder's Lighting Medium, Exhibit E.' With the exception of the testimony regarding the lost part of Wilder's exhibit E, the state of facts in the present interference is almost identical with that prevailing when the case was previously considered by the several appellate tribunals, and for this reason the findings of the court of appeals in the prior case, so far as not affected by the introduction of new evidence, are considered binding in the present case. For the same reason, and for the further reason that Blackford in his brief seeks to derive the benefit of the findings of the court in the first interference, comment has been made in one instance upon the fact that certain of Blackford's testimony in the present case does not harmonize with that in the first interference.

\*       \*       \*       \*       \*       \*       \*       \*       \*

"Wilder has proved that the lighting member was present in exhibit E when tested in 1896, and it appears from the testimony of Harlan P. Wilder (Q. 19) that combustion section of the form specified in the issue was used at that time with exhibit E, which in other respects embodies the issues of the present interference as fully as it did that of the first interference. Wilder must therefore be credited with the date of exhibit E as his date of reduction to practice of the invention in issue. Inasmuch as none of the structures which Blackford alleges were made before Wilder's exhibit E embodied the invention in controversy, Wilder must, by reason of the construction and operation of that exhibit, be considered the first inventor."

(2) From decision of Examiners-in-Chief:

"The issue of the interference being thus a new one, it is clear that the decision of the court of appeals in the former proceeding does not, as contended by counsel for Blackford, render

the question of priority *res judicata*. The court, however, determined certain questions of fact, and their findings as to these matters will, of course, not be controverted. Thus, it was decided that Blackford's exhibit D embodies the subject-matter of the prior interference, and was completed and suc·cessfully operated in November, 1896. If, as held by the court of appeals, this exhibit is an oil bowl, it necessarily contains also the issue of the present interference.

"We have therefore, as a starting point in the present controversy, the established fact that Blackford embodied the invention of the issue in a practical device as early as November, 1896, or prior to the date (April 19, 1897) of Wilder's application, and Wilder, in order to prevail, must overcome this reduction to practice by showing priority as to both conception and reduction to practice, or by showing a prior conception and a later reduction to practice, coupled with reasonable diligence.

"Wilder has offered in evidence an oil bowl that is known to the record as exhibit E. This exhibit, when associated with perforated combustion tubes, such as the testimony shows were used in connection with it, clearly embodies the issue of this interference. The exhibit was made and successfully operated in the early part of 1896, or prior to the date of Blackford's exhibit D, and is a valid reduction to practice antedating the above-mentioned reduction of Blackford. The Examiner of Interferences holds that this exhibit E was constructed some months prior to June, 1896, and we agree with this conclusion as to the date of its production. This agrees with the finding in the previous interference, that the exhibit was made in April, 1896.

"It appears that when exhibit E was considered in the prior interference it was, on account of the absence therefrom of a lighting medium (a wick), held not to involve the issue of that interference. The Examiners-in-Chief and the court of appeals both concurred in this finding of fact, although, while the case was pending before the court of appeals on a motion for rehearing, it was shown that the wick with which the exhibit was originally provided had become separated from the exhibit and

could not be found. Testimony introduced in the present case, however, shows that the exhibit originally contained a wick similar to the one which now lies within its annular channel and that when it was operated a wick was employed as a starting or lighting member.

"It is evident from the foregoing that Wilder, by his proof concerning the production and operation of exhibit E, has established a conception and reduction to practice antedating the reduction to practice to which Blackford is entitled by virtue of his exhibit D."

(3) From decision of Commissioner:

"The applications involved in the present interferences were involved in a prior interference, No. 20,427, upon a different issue, in which the court of appeals of the District of Columbia awarded priority to Blackford. *Blackford* v. *Wilder*, 104 Off. Gaz. 578. In said prior interference the court agreed with the majority of the Examiners-in-Chief in the conclusion that Blackford was the first to reduce to practice the invention of that interference in his exhibit D, in November, 1896. The Examiners-in-Chief and the court of appeals found that Wilder's exhibit E, when the case was before them, was incomplete, and did not have a 'vertically disposed lighting member.' Wilder claimed that exhibit E when filed in the Patent Office contained a wick, but that it became displaced between the time the case was before the Examiner of Interferences and the time it was considered by the Examiners-in-Chief. He brought a motion before the court of appeals that an investigation be instituted as to the alleged loss and recovery of the missing member of exhibit E, and that a rehearing be granted. In denying the motion, the court held (*Blackford* v. *Wilder*, 104 Off. Gaz. 580) that the matter of the wick should have been settled in the Patent Office before appeal was taken to the court; also that the question of priority turned upon the fact whether exhibit E contained a lighting member of the specific character called for by the issue, at the time of the alleged reduction to practice in 1896, and not at the time it was introduced in evidence,

and that the evidence failed to establish satisfactorily this essential fact.

"Upon the conclusion of the interference and the resumption of *ex parte* proceedings in the Patent Office, Wilder presented a claim not limited to the specific form of igniting member of the former interference, but which, he alleged, was based on his exhibit E, and he requested the institution of an interference proceeding for the purpose of contesting the question of priority of the invention of said claim.

\*      \*      \*      \*      \*      \*      \*      \*      \*

"In the former interference the court of appeals based its decision in favor of Blackford on the finding that his exhibit D was completed and successfully operated in November, 1896. If this exhibit has an oil bowl and embodied that issue of that interference, it undoubtedly is a reduction to practice of the present invention. Starting with this exhibit, the burden is therefore on Wilder to establish either a prior reduction to practice, or a prior conception coupled by due diligence with a subsequent reduction to practice.

"The only exhibits alleged to have been made prior to November, 1896, when exhibit D was completed, and the only ones which require consideration, are, for Wilder, exhibit E, alleged to have been made in April, 1896, and, on the part of Blackford, exhibits C and A, alleged to have been made in January and February, 1896, respectively.

"It has been found, in both this and the prior interference, that these exhibits were made at these dates as alleged. The dates of these exhibits are not contested, but the controversy relates to whether these exhibits embody the invention and were successful reductions to practice of the invention on the dates they were made.

\*      \*      \*      \*      \*      \*      \*      \*      \*

"It thus appears that the court did not hold that exhibit E had no igniting member, but that the evidence did not show that it had the one called for by the issue of that interference in April, 1896. It is to be noted that the present issue is broader than the issue of the former interference in respect to

the igniting member. While the present issue is satisfied with 'means located in the trough for igniting or starting the vaporization of the oil,' count 1 of the issue of the former interference called for 'a vertically disposed lighting member seated in the liquid-containing portion and extending upward between the walls of the enlarged vapor-receiving portion to form a vapor-space at the side of the lighting-chamber.' Counts 2, 3 and 4 of the former issue call for a lighting member of substantially similar character.

"The testimony, in this interference, of Wilder and his corroborating witnesses, conclusively establishes that exhibit E was provided with the igniting member of the issue of this interference when operated in April, 1896."

To sum up: The parties are the same. The applications are the same, and disclose the invention of each issue. The constructions relied on, respectively, as evidencing conception and reduction to practice of the invention of both issues are the same. The fundamental facts of both cases are the same. Applying the well-settled principle of estoppel by judgment, before stated, it follows inevitably that the final decision in the first interference is conclusive, unless it can be made to appear that the question upon which the determination of the second case rests is one that neither was nor could have been presented and determined in the first case.

The contention is that this essential difference between the two cases lies in the fact that the claims of the second interference are broader in scope than those of the first, and cover an essentially separate and distinct invention. We are unable to concur in the decisions of the Patent Office tribunals maintaining this view. As pointed out in the cases heretofore cited, in declaring interferences in the Patent Office, identity of subject-matter is not determinable merely by the language of the claims preferred by the respective applicants. By the several decisions under review on this appeal it is shown that the later claims of Wilder might have been presented in the first instance, if so advised, and Blackford brought into interference with him, then

as he has been since; for, as they expressly hold, Blackford's exhibit D, being an oil bowl, necessarily contained the issue of the second interference. Instead, Wilder preferred to adopt the more specific claims of the first issue, drawn, as the present ones were, upon the structure shown in his exhibit E, and reading as well on Blackford's exhibit D. That issue having been decided in favor of Blackford, Wilder has been permitted to make the new claims, and has been awarded priority of invention over the claim of Blackford founded on the structures proved in the first case, on additional evidence to that introduced on the first trial tending to show that his exhibit E did, in fact, have in it the wick of the first issue, notwithstanding that had been one of the questions expressly decided in the former case. Having had the right to make the broader claims in the earlier stages of the proceedings in the Patent Office, as well as the opportunity, in the first proceeding, to introduce all of his evidence relating to the construction and operation of his exhibit E structure, his right, in both respects, terminated with that litigation.

Whether the former decision was right or wrong, or was induced by the want of the particular evidence that was offered in the present case, is not the question. However that might be, it was final and put an end to the litigation in the first interference. It must be held, therefore, as conclusive of every question that not only was, but also might have been, presented and determined in that case.

The motion to dissolve the second interference ought to have been sustained, and Wilder's claims finally rejected, as provided in rule 132.

The decision appealed from will therefore be reversed. It is so ordered; and that this decision be certified to the Commissioner of Patents as required by law.                *Reversed.*