## IN RE MARCONI.

---

PATENTS; PATENTABILITY; JUDICIAL NOTICE; JUDGMENTS; RES JUDICATA; INTERFERENCE; ESTOPPEL; REISSUES; SPECIFICATIONS AND CLAIMS.

1. In acting upon an application for a patent, the Commissioner of Patents may, without formal proof of the record of proceedings in the Supreme Court of the United States, take notice of facts adjudicated therein (following *Re Drawbaugh,* 9 App. D. C. 219) ; and he may also act upon knowledge derived from a search of the records and decisions made in his own department.
2. There should be an end of litigation in the Patent Office as elsewhere, and the principle of *res judicata* is applied therein to its fullest extent. (Following *Blackford* v. *Wilder,* 28 App. D. C. 535; *Horine* v.

*Wende,* 29 App. D. C. 415; *Re Edison,* 30 App. D. C. 321; *United States ex rel. Newcomb Motor Co.* v. *Moore,* 30 App. D. C. 464, and *Carroll* v. *Hallwood,* 31 App. D. C. 165.)

3. An award of priority in an interference case will estop the unsuccessful party from successfully applying for a reissue of a patent on an application which he had pending at the time of the interference, where in his reissue application he so broadens his original claims that if granted they will dominate those of the interference and impair the operation and effect of the decision therein, and where the broader claims could have been presented and determined in the interference if the applicant had so elected. (Following *Blackford* v. *Wilder,* 28 App. D. C. 535, and citing *Re Drawbaugh,* 9 App. D. C. 219; *Horine* v. *Wende,* 29 App. D. C. 415; *Re Edison,* 30 App. D. C. 321; *United States ex rel. Newcomb Motor Co.* v. *Moore,* 30 App. D. C. 464, and *Carroll* v. *Hallwood,* 31 App. D. C. 165.)

No. 746.  Patent Appeals.  Submitted January 10, 1912.  Decided February 5, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting certain claims of an application for a reissue of a patent.                    *Affirmed.*

The facts are stated in the opinion.

*Mr. L. F. H. Betts* for the appellant.

*Mr. Robert F. Whitehead* for the Commissioner of Patents.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal by Guglielmo Marconi from the decision of the Commissioner of Patents rejecting the following claims of an application for the reissue of a patent:

"17. In a wireless telegraph transmitter, the combination of two rotatable members, teeth on the adjacent portions thereof, an oscillation circuit connected with said rotatable members, and means for rapidly rotating said members so that the teeth shall be caused to pass one another in opposite directions.

"18. A spark-gap device comprising movable terminals and means for simultaneously rotating said terminals toward and away from each other, for the purpose of making and breaking a spark, substantially as described.

"19. In a wireless telegraph transmitter, the combination of two rotatable disks adapted to rotate in the same direction, teeth on the adjacent peripheries thereof, an oscillation circuit connected to said disks, and means for rapidly rotating said disks so that the teeth may be caused to pass one another in opposite directions, substantially as described."

The patent No. 935,381, for which the reissue is applied, was granted September 28, 1909, on an application filed October 1, 1907. A British application for the same patent was applied for February 25, 1907. It relates to transmitting apparatus for wireless telegraphy, and specially to means for creating high frequency alternating currents. While it discloses a sufficient foundation for the broad claims now under consideration, the claims cover the specific form of the invention.

The revolving wheel as shown is formed of two metal disks, with equally spaced teeth projecting radially outward from their peripheries. These are fixed side by side, but insulated from each other, the teeth of one disc being spaced midway between the teeth of the other, and the bodies of the disks are respectively connected to the two poles of the current generator. Revolving in the same plane and in the same direction as the generator wheel, and in close proximity to it, but not in contact with it, is a toothed collector consisting of a plain metal disk, the outer rim of which is broad enough to carry teeth which will project over the teeth of both disks of the generator wheel, the distance between the teeth on this collector wheel being the same as that betwen the teeth of either of the two disks of the generator wheel. The electro-motive force of the source of electricity employed should be sufficient to cause the current to jump the small air space between the teeth of the generator wheel and the teeth of the collector wheel

as these pass each other when revolving close together; the wheels turning in the same direction.

Marconi also filed another application on March 31, 1909, relating to transmitting apparatus for wireless telegraphy, in which the discharge takes place across a small gap between discontinuous metal surfaces in relative motion at a very high speed.

In the specific form described and shown, the moving surfaces consists of pegs or studs on the adjacent faces of two parallel disks fixed to two shafts in a line with each other and revolved in opposite directions, the shafts being mounted in insulated bearings.

Clifford D. Babcock filed an application July 17, 1907, describing an apparatus for a transmitter for wireless telegraphy, in which the disks provided with studs on their adjacent faces rotate in opposite directions. On July 12, 1909, while both of Marconi's applications were depending, an interference was declared between his later, or second, application and Babcock's. The issue was declared in the following counts:

1. In a wireless telegraph transmitter, the combination of two disks, means for rapidly rotating the disks in opposite directions, studs on the adjacent faces of the disks, and an oscillation circuit connected to the disks.

2. In a wireless telegraph transmitter, the combination of two parallel disks, means for rapidly rotating the disks in opposite directions, studs on the adjacent faces of the disks, and an oscillation circuit connected to the disks.

When the preliminary statements were opened, it appeared that Marconi had alleged a date of invention later than Babcock's filing date. Notice was given Marconi to show cause within a given time why a decision of priority should not be made in favor of Babcock on the record; and this time was on request therefor extended. No cause having been shown by the extended date, priority was awarded to Babcock, and there was no appeal therefrom. Patent issued to Babcock in execution of the decision on July 19, 1910.

The chief contention in the case is over claims 17 and 18,

which it is conceded by appellant are broader than those contained in the issue of interference; but the latter, he contends, "are limited to, and cover nothing more than, specific and detail improvements common to both the Marconi and Babcock apparatus described in their respective later applications." No question was made in the Patent Office that the re-issue application had sufficient foundation in the description of patent No. 935,381, or that it was in full compliance with the rules governing reissue.

The ground of rejection was that Marconi was estopped to make the broad claims of the application by reason of the former decision in the interference.

The reason given is that while the claims directly involved therein were narrower than those of the present application, these broader claims could readily have been made on the one involved, and priority determined therein, wherefore the right to them is concluded by that adjudication. In support of that view, *Blackford* v. *Wilder*, 28 App. D. C. 535, and other cases, are cited.

The question is whether the principle of *res judicata* has been correctly applied in refusing the reissue application.

The first contention of the appellant is that the parties to the proceedings are not the same, because the parties to the interference were Marconi and Babcock, while the present controversy is between Marconi and the Patent Office. The distinction is one of form, and not of substance. The proceeding is *ex parte*. The Patent Office—the Commissioner of Patents— is not a party to the proceeding in the ordinary sense. He is the head of the office in which all applications for patents are filed. When filed in proper form, and fees paid, it is his duty to cause examinations to be made, and to issue the patent if "it shall appear that the claimant is justly entitled [thereto]." Rev. Stat. sec. 4893, U. S. Comp. Stat. 1901, p. 3384. "It is the duty of the Commissioner of Patents, representing the public, and also the private rights of the inventor involved in the pending application, as well as all other inventors having the sanction of the Patent Office, to see that entire justice be

done to all concerned." *Re Drawbaugh*, 9 App. D. C. 219–240. If, in the performance of his duty, the examination discloses a former patent anticipating or covering the invention applied for, the applicant is not justly entitled to a patent, and it is his duty to so decide. If the right of the applicant to the invention has been adjudicated against him in a former proceeding, either in the courts or the Patent Office, he may likewise reject the application; and he may, without formal proof of the record of proceedings in the Supreme Court of the United States, take notice of the facts adjudicated therein. *Re Drawbaugh*, 9 App. D. C. 219–258.

For a stronger reason he may act upon knowledge derived from a search of the records of litigation and decisions made in his own department. Unquestionably, a patent issued on this application would dominate the subject-matter of Babcock's patent that was involved in the interference proceeding and decision. If the broader claims now applied for were necessarily included in the scope of that decision, and concluded thereby, it was the duty of the Commissioner to reject them, for the patent could not justly be issued. It is true that the Commissioner might, in the exercise of his discretion, and especially if in doubt, have declared another interference with Babcock, and devolved upon him the burden of maintaining the conclusiveness of the former adjudication. But he was under no obligation to pursue that course in what he regarded as a plain case, and the effect of his representation of Babcock's interest for the purpose of urging the former adjudication is, for all the purposes of the present proceeding, the same as if Babcock were a formal party.

The second contention is that the broad claims were not, and could not be, involved in the interference, because patent 935,381 had issued before Babcock's application had been disclosed to Marconi in the interference case, and therefore Marconi could not make the broad claims in his later application for the reason that they would be invalidated if granted, because they could have been made in the first application for which patent had issued

Assuming this would be the result, he might, nevertheless, have made the claims in the depending application, and obtained an adjudication of priority as to them, if entitled thereto, in the interference proceeding. Having obtained such an adjudication, he might probably have avoided the result apprehended by striking them out by amendment, and then presenting them in the application for reissue of his older patent. Be that as it may, however, this situation was presented to him: He could not overcome the date of Babcock's application in respect of the specific invention of the issue; and he feared to present the broader claims, because, if awarded to him, they might be invalidated by the former patent, in which they might have been included by amendment before issue, or by reissue afterwards. An extension of time was given him, in which he might consider the proper action to take under the circumstances presented. At any rate, as said by the Commissioner: "But for the fact that Marconi had been granted an earlier patent, these claims could undoubtedly have been put in the later application, and included in the interference. If they could not have been put therein, then it was clearly incumbent upon Marconi, if he would contest these claims, to have promptly filed his application for reissue, so that it could have been included in the interference, or, if it was not possible to have filed the reissue within time for filing preliminary statements, or that fixed by the order to show cause, to have asked for an extension until such reissue could be filed. To grant these claims to Marconi would, as pointed out by the Examiners in Chief, give him claims dominating Babcock upon the very subject-matter upon which he prevailed in the interference." Had Marconi desired to pursue the course suggested, there could be no doubt that he would have been given plenty of time, and that his reissue application, applied for promptly, could and would have been brought into the interference. Instead, he elected to abide the judgment in the depending cause, and suffer Babcock's patent to issue in pursuance thereof.

Having done so, he seeks now to dominate those claims by the broader ones which might, and ought, if intended ever to

be claimed, to have been expressly embraced in that litigation. We think that the Commissioner was right in deciding that he was concluded by the former decision. There should be an end of litigation in the Patent Office as elsewhere, and the principle of *res judicata* is applied therein to its full extent. *Blackford* v. *Wilder,* 28 App. D. C. 535; *Horine* v. *Wende,* 29 App. D. C. 415; *Re Edison,* 30 App. D. C. 321–323; *United States ex rel. Newcomb Motor Co.* v. *Moore,* 30 App. D. C. 464–476; *Carroll* v. *Hallwood,* 31 App. D. C. 165. The appellant is in error in the contention that *Blackford* v. *Wilder,* supra, is distinguishable, and inapplicable to the conditions of this case, because the broader claims therein involved had been presented in the same application after the adverse decision on the narrower claims, and were, moreover, founded on the same construction shown in an exhibit that had been relied upon in the cause. The particular facts in that case furnished plainer grounds, perhaps, for the application of the principle, but not essentially different ones. These claims were within the disclosure of the second application in specification and drawing, and might have, as we have seen, been made and brought into that interference, and expressly and directly embraced in the decision therein. To allow them in this subsequent proceeding would result in a patent dominating the narrower claims then directly determined, and impair the operation and effect of that decision. The conditions bring the case within the doctrine thus stated in *Blackford* v. *Wilder* (supra, p. 550): "Applying the well-settled principle of estoppel by judgment, before stated, it follows inevitably that the final decision in the first interference is conclusive, unless it can be made to appear that the question upon which the determination of the second case rests is one that neither was, nor could have been, presented and determined in the first case."

The other cases are in accord. The decision was right, and will be affirmed. This decision will be certified to the Commissioner of Patents. *Affirmed.*