## In re BRASHARES.

### Patent Appeal No. 3365.

Court of Customs and Patent Appeals.
Jan. 28, 1935.

Rehearing Denied Feb. 25, 1935.

Richard Eyre, of New York City, and A. L. Vencill and R. H. Wood, both of Swissvale, Pa., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner holding appellant to be estopped, because of noncompliance with Patent Office Rule 109, from making certain claims inserted in his application for the purpose of bringing about an interference proceeding between it and a patent No. 1,854,602 issued April 19, 1932, to Charles W. Prescott, assignor to General Railway Signal Company (hereinafter referred to as the General Company) upon an application filed April 16, 1925.

The application of appellant was filed March 3, 1924. Subsequently, it was assigned to the Union Switch & Signal Company (hereinafter referred to as the Union Company), the assignment being recorded in the Patent Office, according to the Examiner's statement, October 17, 1927. The claims here at issue were inserted in the application on August 12, 1932.

The subject-matter relates to the control of a railway siding switch. In view of the limited issue before us, it is unnecessary to describe the device in detail. There are three claims, No. 50 being the one copied literally from the Prescott patent where it appeared as claim 23. It reads:

"50. In combination with a power operated switch machine, manually actuable means for setting the switch machine in one position, and means for automatically returning the switch machine to the other position requiring the occupancy and the subsequent vacancy of a given section of trackway, and manually operable release means for permitting the automatic return of the switch machine to the other position regardless of occupancy and vacancy of the section of trackway."

Claims 51 and 52 contain certain limitations and are stated to be generally similar to Prescott's claim No. 16. It is agreed that all the claims, so far as the issue before us is concerned, are in the same category.

The statement of the Examiner contains the following recital of facts:

"The Prescott patent above referred to was, during its pendency in the Patent Office as an application (Serial No. 23,543), involved in Interference No. 57784, Shaver v. Prescott v. Padmore, declared January 19, 1929. That interference also involved an application of Bertram R. Padmore, Serial No. 658,540, which had been assigned to the Union Switch and Signal Company by an assignment recorded August 29, 1923. The present Brashares' application, now before your Honors, was also owned by the Union Switch and Signal Company, by reason of mesne assignments, recorded October 17, 1927. Thus, during the motion period in Interference No. 57784, the assignee of the present Brashares' application had access to the Prescott application and could have moved to have an interference declared between Prescott and Brashares. The very claim upon which interference is now sought was then standing allowed in the Prescott application as Claim 29 (Paper No. 5 of the Prescott patent file; the claim was later renumbered 23 in the patent).

"However, the common assignee failed to bring such a motion, and on May 8, 1930, the interference was dissolved on the

ground that the single count thereof was unpatentable over prior art. Subsequently, the Prescott application matured into patent No. 1,854,602, granted April 19, 1932."

Following the foregoing recital, the Examiner cited authorities in support of the application of the doctrine of estoppel.

In its discussion of the case, the Board of Appeals said, inter alia:

"* * * Appellant in effect urges that a holding of estoppel is discretionary with the officials of this Office and that, when there is sufficient reason to excuse the failure to bring a motion under Rule 109, it is proper to permit the declaration of another interference. Appellant states that companies owning large numbers of applications relating to the same general subject matter find it almost impossible to be sure that matters are not overlooked during interference proceedings and that therefore it is unreasonable for the Office to insist on a hard and fast rule in all cases. * * *

"It is our opinion, to accept the excuse of ignorance as a reason for declaring a second interference would practically nullify the rule which has been followed and which it is believed is very essential to a proper interference practice. We appreciate the great difficulties that must exist under the conditions referred to by appellant but we do not consider that that justifies the breaking down of a necessary rule."

The pertinent portions of rule 109 read as follows:

"An applicant involved in an interference may, at any time within thirty days after the preliminary statements (referred to in rule 110) of the parties have been received and approved, on motion duly made, as provided by rule 153, file an amendment to his application containing any claims which in his opinion should be made the basis of interference between himself and any of the other parties. Such motion must be accompanied by the proposed amendment, and when in proper form will be set for hearing before the law examiner. Where a party opposes the admission of such an amendment in view of prior patents or publications, full notice of such patents or publications must be given at least five days prior to the date of hearing. On the admission of such amendment and the adoption of the claims by the other parties within a time specified by the law examiner the primary examiner shall redeclare the interference or shall declare such other interferences as may be necessary to include the said claims. * * *

"Any party to an interference may bring a motion to put in interference any claims already in his application or patent which in his opinion should be made the basis of interference between himself and any of the other parties. Any party to an interference may bring a motion to substitute any other application owned by him, as to the existing issue, or to include an application or a patent owned by him, as to claims which he deems should be made the basis of interference between himself and any of the other parties. Such motions are subject to the same conditions, and the procedure in connection therewith is the same, as far as applicable, as hereinabove set forth for motions to amend."

Appellant has assigned numerous reasons of appeal, all of which are covered, in substance, by his contentions under two "Points of Argument," stated in the brief as follows:

"I. Under the special circumstances of this case, Union Company should not be held to be estopped, because it is without fault, and because its adversary is not an innocent party that should be protected.

"II. Estoppel cannot be created against an assignee on the ground of its failure to move under Rule 109 to insert a claim for subject-matter which is not disclosed in said assignee's interfering application."

Upon what were deemed by this court to be apposite and controlling authorities, as well as upon reason, we have more than once affirmed proceedings of the Patent Office under rule 109, supra, thus indicating our belief in the validity of the rule itself, and of the reasonableness of its application under the facts which the cases then before us presented.

We first had occasion to pass upon it in the case of In re Austin, 40 F.(2d) 756, 17 C. C. P. A. (Patents) 1202. This case is quoted from in the statement of the Examiner.

The adjudication there actually made, having any pertinence here, was that the assignee of a sole application and a joint application (the sole application being in the name of one of the parties to the joint application), both of which disclosed subject-matter, with claim therefor, involved in an interference declared only between the joint application and a third party, should have presented the pertinent subject-matter of the sole application, under the rule, and that having failed so to do, the tribunals of the Patent Office were correct in holding that

assignee was estopped, in an ex parte proceeding, from making such claims of the sole application as could have been presented for a determination of priority in the interference.

It is to be borne in mind that the two claims of the sole application to which the doctrine of estoppel was applied in that decision had been present in the sole application during the pendency of the interference. So that case differed from the case at bar to the extent that the sole application there contained actual claims, while the Brashares' application here involved contained only disclosures upon which claims might have been but were not drawn during the pendency of the interference.

The doctrine of the foregoing case was followed by us, but not extended in the cases of In re Ellis et al., 47 F.(2d) 963, 18 C. C. P. A. (Patents) 1060, In re Krauch, et al., 56 F.(2d) 290, 19 C. C. P. A. (Patents) 1003, and In re Louis Boudin, 58 F.(2d) 448, 19 C. C. P. A. (Patents) 1187.

All the foregoing cases contain citations from decisions of other courts, particularly the Court of Appeals of the District of Columbia, our predecessor in patent jurisdiction.

In the case of In re Shimer, 69 F.(2d) 556, 21 C. C. P. A. (Patents) 979, the rule was applied under a somewhat different state of facts.

Of our findings there, the brief of appellant says: " * * * [Those findings] have perhaps gone as far as this or any Court has ever gone in approving the Patent Office in its applications of this doctrine of estoppel."

In that case the application involved was the same application which had been in an interference in which the party, Shimer, had seen applications of his opponents which disclosed, but, apparently did not claim, the subject-matter of certain of the claims he was seeking to make in the ex parte proceeding. The tribunals of the Patent Office held that to allow such claims to be made would be to "provide grounds for a new interference involving an application with which the applicant has already been involved in interference," and this court affirmed that view.

A difference between the Shimer Case, supra, and the case at bar is that the Brashares' application, the only application belonging to the General Company, in which the here involved claims could have been made, was never in interference with the Prescott application.

Careful consideration has been given to contentions made on behalf of appellant, and the authorities cited in support of same, but we are unable to discern any distinction in principle between the situation existing here and that which existed in the several cases above noted in which the application of the doctrine of estoppel by the tribunals of the Patent Office was sustained, nor do we think the facts of this case are analogous to those which existed in the case of In re Chase, 71 F.(2d) 178, 21 C. C. P. A. (Patents) 1183.

The decision of the Board of Appeals is affirmed.

Affirmed.