INTERNATIONAL CELLUCOTTON PROD-
UCTS CO. v. COE, Commissioner
of Patents.

No. 6496.

United States Court of Appeals for the
District of Columbia.

Decided Aug. 31, 1936.

Edward W. Shepard, of Washington, D.
C., and Cyril A. Soans, of Chicago, Ill., for
appellant.

R. F. Whitehead, Solicitor, United
States Patent Office, and William Wallace
Cochran, both of Washington, D. C., for
appellee.

Before MARTIN, Chief Justice, and
ROBB, VAN ORSDEL, GRONER, and
STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal by the International
Cellucotton Products Company from a de-
cree of the Supreme Court of the District
of Columbia [1] dismissing its bill of com-
plaint in equity against the appellee, the
United States Commissioner of Patents.

The bill sought an order directing the ap-
pellee to allow certain claims of the Oscar
T. Thompson application for a patent on a
sanitary-pad folding machine and to issue
letters patent to the appellant. The appel-
lee answered and there was a trial on the
merits. The theory of the answer and of
the court's dismissal of the bill of complaint
was that the appellant was estopped to as-
sert the claims. Whether the appellant was
so estopped is the sole question on appeal.

The material facts are undisputed: On
January 18, 1924, William Bauer filed an
application (Serial Number 687,012) in the
Patent Office for a patent for a sanitary-
pad making machine. On March 29, 1926,
Harrison R. Williams filed application
(Serial Number 98,050) for a patent for a
sanitary-pad making machine, and this ap-
plication disclosed also a pad folding at-
tachment. On November 15, 1926, Oscar
T. Thompson filed application (Serial Num-
ber 148,322) for a patent for a sanitary-
pad folding machine. Prior to the happen-
ing of the matters hereinafter mentioned
the Bauer and Thompson applications had
come by virtue of assignments to be held
by one and the same person, a predecessor
in interest of the appellant. On January
22, 1927, the Commissioner of Patents de-
clared an interference (Number 54,823),
hereinafter called the first interference, be-
tween the Williams application and the
Bauer application. The appellant's prede-
cessor in interest, the holder of both the
Bauer and Thompson applications, made no
motion to bring the Thompson application
into this first interference. This interfer-
ence was dissolved as to certain counts but
continued as to others, and as to the latter
a decision was rendered in favor of the
Bauer application, and on March 3, 1931, a
patent was issued to the appellant on the
Bauer application.[2] On July 27, 1932, the
Commissioner of Patents voluntarily de-
clared an interference (Number 64,282),
hereinafter called the second interference,
between the Thompson application and the
Williams application, which, as above
noted, disclosed a sanitary-pad folding at-
tachment. This interference contained
counts corresponding to Thompson claims
23, 33, 34, 37 and 38, the claims in issue in
this appeal. Williams moved to dissolve
the second interference on the ground that
the appellant, which by this time had by as-

---

[1] Now named the District Court of the
United States for the District of Colum-
bia. Public No. 796, 74th Congress, ap-
proved June 25, 1936.

[2] These facts do not appear in the rec-
ord, but they are stated in the appellant's
brief and admitted in appellee's brief.

signment itself become the holder of both the Thompson and Bauer applications, was estopped to assert such claims because of the failure of the appellant's predecessor in interest to move, under Patent Office Rule 109, to add the Thompson application to the first interference. So far as here material Rule 109 provides:

"An applicant involved, in an interference may, within a time fixed by the examiner of interferences not less than thirty days after the preliminary statements (referred to in rule 110) of the parties have been received and approved, or if a motion to dissolve the interference has been brought by another party, within thirty days from the filing thereof, on motion duly made as provided by rule 153, file an amendment to his application containing any claims which in his opinion should be made the basis of interference between himself and any of the other parties.

* * * * * *

"Any party to an interference may bring a motion to substitute any other application owned by him, as to the existing issue, or to include an application or a patent owned by him, as to claims which he deems should be made the basis of interference between himself and any of the other parties * * *."

The Examiner of Interferences granted Williams' motion. His decision was affirmed by the Board of Appeals of the Patent Office, and that Board also denied a petition for rehearing. The Primary Examiner of the Patent Office rejected, by reason of the foregoing rulings, the Thompson claims in issue. He rendered a second decision to the same effect, and on December 4, 1933, this was affirmed by the Board of Appeals.

On December 18, 1933, the appellant's bill of complaint in equity was filed in the Supreme Court of the District of Columbia. It invoked the jurisdiction of the court under U.S.Code, title 35, § 63, R.S. § 4915, 16 Stat. 205, § 52, as amended by 44 Stat. 1336, § 11, as amended by 45 Stat. 1476, § 2 (b), 35 U.S.C.A. § 63. Upon answer and after a hearing a decree was entered dismissing the bill. The trial court found that:

"During the pendency of the Williams-Bauer Interference No. 54,823 no motion was made under Patent Office Rule 109 to have an interference declared between Thompson and Williams."

The trial court ruled as a conclusion of law that:

"Thompson's claims 23, 33, 34, 37 and 38, here in issue, could not have been made issues of the first Interference No. 54,823." The appellee concedes that:

"It is obvious that literally the question of priority between Thompson and Williams as to priority of invention of the attachment to the pad folding machine could not have been tried in the Bauer-Williams interference since Bauer did not disclose that device."

The position of the appellee in support of the decree of the trial court is that under Rule 109 it became the duty of the appellant (i. e. appellant's predecessor in interest), as holder of the Thompson application, to "bring a motion" at the time of the declaration of the first interference to include therein the Thompson application "as to claims which he deems [i. e. which appellant's predecessor in interest deemed] should be made the basis of interference between himself and any of the other parties",—i. e. Williams. Failure of the appellant to make such a motion, argues the appellee, became the predicate of an estoppel in pais, whereby the appellant became disabled to assert the Thompson claims in the second interference, and disabled to assert them herein.

■ We think the position of the appellee is not supportable: This court has characterized estoppel arising out of omission to assert claims in an interference proceeding as estoppel by judgment, not as estoppel in pais; that is to say, the court has applied the doctrine res judicata. In Re Marconi, 38 App.D.C. 286, such a question of estoppel was presented. That case was an appeal to this court, under its then jurisdiction to review directly decisions of the United States Commissioner of Patents, from a decision of the Commissioner rejecting claims in an application for reissue of a patent, on the ground that the applicant was estopped because he had not asserted them in an interference proceeding. It appeared that while the claims involved in the interference proceeding were narrower than those presented in the application for reissue of patent, the broader claims could have been asserted in the interference proceeding. The court held that the decision of the Commissioner that the applicant was estopped was correct, for the following reasons:

"We think that the Commissioner was right in deciding that he was concluded by the former decision. There should be an end of litigation in the Patent Office as

elsewhere, and the principal of *res judicata* is applied therein to its full extent. [Citing authorities, including Blackford v. Wilder, 28 App.D.C. 535.] * * * The conditions bring the case within the doctrine thus stated in Blackford v. Wilder * * * : 'Applying the well-settled principle of estoppel by judgment, before stated, it follows inevitably that the final decision in the first interference is conclusive, unless it can be made to appear that the question upon which the determination of the second case rests is one that neither was, nor could have been, presented and determined in the first case.' " 38 App.D.C. 286, at page 293.

In Re Dement, 49 App.D.C. 261, 263 F. 813, in a similar situation, we again sustained on the basis of *res judicata* a Patent Office decision predicated upon estoppel. We said there:

"It has long been settled law that a judgment between the same parties upon the same cause of action is *res judicata,* 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' [Citing authorities.] " 49 App.D.C. 261, at page 263, 263 F. 813, 815. Again, in Re Wasserfallen, 54 App.D.C. 367, 298 F. 826, in a like situation we said:

"In so far as the Patent Office and this court are concerned, the adjudications already had in this matter have finally settled, not only the rights of the parties under the issue or counts of the interference, but every question and the rights to every claim which might have been presented and determined in the interference proceedings. [Citing authorities, including Blackford v. Wilder, *supra.*]

* * * * * *

"If the tribunals of the Patent Office having jurisdiction of the subject-matter and of the parties in interference proceedings err in the exercise of that jurisdiction, their decision, though erroneous, is not subject to attack in a collateral proceeding. If Strifler was improvidently granted a right to amend, or if the right to amend or the withdrawal from issue was improvidently denied to Wasserfallen, the errors resulting should have been corrected on appeal from the interference decision. If they were not so corrected, they certainly cannot now be reviewed on an ex parte appeal from a decision refusing to reissue the patent, which was issued to Wasserfallen upon the voluntary payment by him of the final fees and after withdrawal from issue had been denied. The rulings of which the appellant now complains were or might have been assigned as error on appeal in the interference proceeding, and the questions which he now submits to this court were presented or might have been presented by Wasserfallen therein. Those rulings and questions became res judicata by the decision of this court on the appeal taken by him in the interference proceeding, and he cannot at this late day be permitted to relitigate them for the purpose of dominating the patent which that decision awarded to Strifler. [Citing authorities, including In re Marconi, *supra.*] " 54 App.D.C. 367, at pages 369–370, 298 F. 826, 828.

While the court in Re Marconi, Re Dement, and Re Wasserfallen, *supra,* did not in terms refer to Rule 109, its decisions in those cases were nevertheless based upon the theory that where there is an opportunity to include claims in an interference (which are issuable therein) the failure to move to include them precludes their later assertion, this under the doctrine *res judicata.* It may be noted further that while Rule 109 was not referred to in the cases just mentioned, it was in existence at the time of the decisions. It was referred to in the briefs in Re Marconi and In re Dement.[3] In Re Capen, 43 App.D.C. 342, and in Application of Doble, 57 App.D.C. 10, 16 F.(2d) 350, where also it was held that an estoppel arose by omission to assert claims in an interference, Rule 109 was in terms referred to. While those two cases do not refer expressly to the doctrine *res judicata,* the theory of decision in Re Capen was clearly enough that doctrine for the court says, referring to Rule 109, "The object of this rule obviously is to require the parties to an interference to have determined in that proceeding all rights growing out of their respective applications." Application of Doble is based upon In re Capen.

The United States Court of Customs and Patent Appeals, also, in respect of the issue under discussion, applies the doctrine *res judicata,* not the doctrine estoppel *in pais.* In Re Chase, 71 F.(2d) 178, 21 C.C.P.A.(Patents) 1183, as in the instant

---

[3] Apparently Rule 109, at the time of the decisions above-mentioned, was in different form than at present; but in its then form it nevertheless afforded opportunity to move to bring additional claims into an interference.

case, it had been held in the Patent Office that Chase was estopped to make claims asserted in a second interference because he had not asserted them in a prior interference, and in that case, as here, it was conceded that the claims asserted in the second interference could not have been decided in the first. Reversing the decision in the Patent Office the Court of Customs and Patent Appeals said:

"The rule is well settled in patent law that, as far as the Patent Office and this court are concerned, an interference settles not only the rights of the parties under the issues or counts of the interference, but also settles every question of the rights to every claim which might have been presented and determined in the interference proceedings. The rule was thus stated in Re Wasserfallen, 54 App.D.C. 367, 298 F. 826, and similarly stated in a number of cases there cited. The doctrine has been discussed in a number of cases in this court. In re Austin, 40 F.(2d) 756, 17 C.C.P.A. (Patents) 1202; In re Ellis & Holden, 47 F.(2d) 963, 18 C.C.P.A.(Patents) 1060; In re Krauch et al., 56 F.(2d) 290, 19 C.C.P.A. (Patents) 1003, and In re Boudin, 58 F. (2d) 448, 19 C.C.P.A.(Patents) 1187. The latest expressions of this court on the subject are in the cases of In re Shimer, 69 F.(2d) 556, 21 C.C.P.A.(Patents) 979, and In re Alexanderson, 69 F.(2d) 541, 21 C.C. P.A.(Patents) 983. The rule of estoppel is applied in such cases for the reason that it is necessary to put an end to litigation in the Patent Office. See In re Capen, 43 App.D.C. 342, 344; In re Marconi, 38 App. D.C. 286, 293.

\* \* \* \* \* \*

"We think the doctrine of estoppel above announced would apply if the issues involved here could have been properly suggested and decided in the seven-party [the first] interference. It seems to be conceded that they could not have been decided there and that the declaration of the second interference was necessary. The declaration of the second interference was the proper procedure for the Patent Office to get the exact issues between these parties set at one side for the purpose of trial. It seems anomalous to hold that, having set them aside voluntarily while the seven-party interference was going on, Chase would be held to be estopped from claiming that which he claimed in his second application.

\* \* \* \* \* \*

"With reference to this contention we think it sufficient to say that we do not in the least wish to weaken the force of, nor make less applicable, in proper cases, the doctrine of estoppel as announced in the Wasserfallen, Shimer, and other cases cited, because we think it is of the utmost importance that troublesome, expensive, and sometimes vexatious litigation in the Patent Office should be expedited or avoided. Under the particular facts of the case at bar, we think, however, that the doctrine does not apply, and that the decision of the Board of Appeals affirming the decision of the Examiner in rejecting the claims on the ground of estoppel should be, and it is, reversed." 71 F.(2d) 178, 179, 21 C.C.P.A.(Patents) 1183.

We think it not only clear from the above that the Court of Customs and Patent Appeals based its rejection of an asserted estoppel on the facts of the Chase Case on the proposition that there was no basis in the facts for application of the doctrine res judicata, but also that it made clear that it intended to construe its own decisions on estoppel questions as having been based upon the doctrine res judicata. In re Chase, Rule 109 was in terms referred to.

The appellee relies upon In re Brashares, 74 F.(2d) 751, 22 C.C.P.A.(Patents) 873, in the Court of Customs and Patent Appeals, as overruling In re Chase. But in that case that court took pains to say, at the close of its opinion, " \* \* \* nor do we think the facts of this case are analogous to those which existed in the case of In re Chase, 71 F.(2d) 178, 21 C.C.P.A. (Patents) 1183." It seems clear from this statement that the Court of Customs and Patent Appeals regarded the Brashares and Chase Cases as factually different and therefore that In re Brashares was not intended by the court to overrule the doctrine of In re Chase. But if it should be thought that the two cases are parallel on the facts and that, therefore, In re Brashares does overrule the doctrine of In re Chase, we feel obliged to follow our own decisions, believing that they properly found estoppels arising out of the operation of Rule 109 on the doctrine res judicata.

Under the doctrine res judicata the appellant is not estopped to assert claims 23, 33, 34, 37 and 38 of the Thompson application, for the reason that, as conceded by appellee and found by the trial court, they could not have been made issues in the first interference. Accordingly the decree of the trial court herein is

Reversed.