## IN RE BESWICK'S APPEAL.

PATENTS; PATENTABILITY; REVERSIBLE ERROR.

1. An improvement in musical notation which consists of dividing the whole tone first by three and then successively by two, whereby the expression of whole tones and one-third, one-sixth, one-twelfth, one-twenty-fourth tones, etc., are obtained, *held* to be not patentable.

2. Where patentable novelty has been denied by all the expert tribunals of the Patent Office, it is incumbent upon one appealing therefrom to make out a clear case of error in order to obtain a reversal; *following* In re Barratt, 11 App. D. C. 177, and In re Smith, 14 Id. 893; and this rule is particularly applicable in a case which for its determination requires technical knowledge of an abstruse art that can only be acquired through training, and in which the appellant has made no effort to enlighten his contention by expert testimony.

No. 139. Patent Appeals. Submitted March 13, 1900. Decided April 3, 1900.

HEARING on an appeal from a decision of the Commissioner of Patents refusing an application for a patent. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Edward E. Clement* and *Mr. A. Miller Belfield* for the appellant.

*Mr. W. A. Megrath* for the Commissioner of Patents.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents refusing a patent for an improvement in musical notation.

The rejected claims are nine in number, as follows :

" 1. In musical notation characters, signs or symbols individually adapted to designate tones having lengths equal to a third or an even divisional part thereof, of a whole tone.

" 2. As an improvement in musical notation characters, signs or symbols individually adapted to designate tones having lengths equal to a third or an even divisional part thereof, of a whole tone, in combination with characters, signs or symbols adapted to designate half, quarter, eighth or like tone lengths.

" 3. As an improvement in musical notation, notes adapted to designate tones having lengths equal to one-third or an even divisional part thereof, of a whole tone, and comprising notes having heads or stems and provided with different numbers of dots associated with their stems, substantially as described.

"4. The improvement in notation, consisting of notes individually adapted to designate tones having lengths equal to a third, or a divisional part thereof, of a whole tone, and constructed with heads and stems and also with dots associated with their stems, in combination with notes adapted to indicate half, quarter, eighth or like tone lengths, and constructed with heads and stems.

" 5. As an improvement in musical notation, rests individually adapted to designate silences having a length equal to one-third or an even divisional part thereof, of a whole tone.

" 6. As an improvement in musical notation, rests adapted to designate silences, having a duration equal to one-third, or an even divisional part thereof, of a whole tone, and

comprising different numbers of dots connected together, substantially as described.

" 7. As an article, a music-score in which are employed characters, symbols or signs, individually adapted to designate tones or rests, or both, having lengths equal to one-third or an even divisional part thereof, of a whole tone.

" 8. As an article, a music-score in which are employed notes or rests, or both, adapted to designate tone lengths or silences having lengths equal to one-third or an even divisional part thereof, of a whole tone, and formed substantially as described.

" 9. As an article, a music-score containing characters adapted to designate tones or rests, or both, having lengths equal to one-third or an even divisional part thereof, of a whole tone, in combination with characters adapted to designate tones or rests or both, having lengths equal to one-half or an even divisional part thereof, of such whole tone."

The references cited in the rejection of these claims by the special examiner are Grove's Dictionary of Music, Vol. 1, p. 455, subject, "Dot;" Idem., Vol. 4, p. 173, subject, "Triplet," and the musical publication, "Tam O'Shanter," by William Warren.

1. As shown by the references to Grove, in what is called the ancient system of measured music, "the rythm was at first always triple—that is to say, the accent fell upon the first beat of every three, and each note was of the value of three of the next lower denomination." Vol. 1, p. 455.

And, as stated by appellant, "the tones and rests designated are one-third, one-ninth, one-twenty-seventh, and the like parts of a whole tone, making a system in which the tones and rests are successive divisional thirds of a whole tone."

2. In the modern notation each note is equal to two of the next lower denomination, and the division of a note into three is not provided for, although in the ancient "measured music" it was the rule. Grove's Dictionary, Vol. 4, p. 173.

Here, as stated by appellant, "the notes and rests designate tones and pauses of one-half, one-fourth, one-eighth, and like similar lengths making a system in which the tones and rests are successive divisional halves of the whole tone."

3. By reason of the division into halves in the modern or common notation, "notes worth one-third of the next longer kind have to be written as halves, and are then grouped in threes by means of curved lines with the figure 3 usually placed over the middle note as an additional distinction. Such a group is called a 'triplet,' and is executed at a slightly increased speed, so that the three triplet notes are equal to two ordinary notes of the same species. 'Triplets' may be formed of notes of any kind and also of rests, or of notes and rests together." Grove, Vol. 4, p. 173 ; and see illustrations.

The appellant calls the triplet "a musical anomaly consisting usually of three notes of like denomination grouped together and arbitrarily allotted the time two of them should have, so that when the music is rendered, each tone of the group has but two-thirds of the time to which its denominational value entitles it."

It would seem, however, that, as claimed by the examiner, "the 'triplet' in musical notation has the value of one-third of the note of the next higher denomination. It must therefore be a third, a sixth, a twelfth, a twenty-fourth, etc., of a whole note."

The system of applicant, for which patentable novelty is claimed, is thus described in the brief filed on her behalf:

"Instead of dividing the whole tone successively by two, as is done in the ordinarily employed system just described, she divides it first by three, and then successively by two. In this way the tones expressed are whole tones, third tones, sixth, twelfth, twenty-fourth and like tones; with corresponding rests, of course. As symbols or characters for expressing these tones and pauses, applicant has for convenience selected a system of notes and rests corresponding

in general form and construction to those previously described as embodied in the system of notation now in common use. The third tone she designates by a note similar to the ordinary half-note—that is, a hollow oval head and a vertical stem—with a· dot at the end of the stem. The sixth tone she designates by a note similar to the quarter-note, with a dot at the end of its stem; the twelfth note by a similar note having two dots on its stem; the twenty-fourth and like tones by similar notes, each with one more dot added to the stem; all as shown in the drawing incorporated in the transcript of record between pages 28 and 29. Pauses or silences of corresponding length are conveniently designated by rests involving similar features of construction, as shown in Fig. 2 of the drawings."

It appears, therefore, that the applicant divides the whole tone first by three, as in the ancient system of measured music, and then successively by two, after the method of the modern notation. Thus she obtains the expression of whole tones and one-third, one-sixth, one-twelfth, one-twenty-fourth tones, etc.

After having defined the "time" value of the "triplet," as hereinabove stated, the examiner said:

"The *result* in musical effect of the use of the triplet, etc., in musical notation must therefore be precisely the same as that of applicant's third, sixth, twelfth note, etc. The only difference between the two is that applicant's third, sixth, etc., notes are designated by one or more *dots* on the note-stems, while the triplet is designated by the distinguishing numeral 3 and the slur, a difference merely in symbols used for the same purpose. Applicant has strenuously contended that by the triplet notation it has been impossible to employ a *single* third or sixth note; that *three* must always be employed, and that hence it failed to effect the same result as hers; but the references are a refutation of this."

Proceeding then at some length to compare the system of the applicant with the illustrations given by Grove, and the

published "Tam O'Shanter," his conclusion was, that "in both notations the third, sixth, twelfth and twenty-fourth notes are precisely the same in time value and musical result, and differ merely in form or symbol."

In respect of this difference in symbol he was of the opinion "that it indicates no invention to merely substitute dots on the note-stems instead of the numeral 3 over the note."

Upon appeal to the examiners in chief, this decision was affirmed. Their conclusion was that the system of the applicant "is merely an embodiment of both the ancient and the modern idea of musical notation, namely, the representation by symbols of a whole tone and fractional parts of a whole tone, and it is no departure from that idea either to select particular fractional parts of a whole tone as the theoretic base of a system or to select any particular form of symbol to designate such fractional parts of a tone."

This decision was in turn affirmed by the Commissioner, who also overruled a petition for rehearing.

We have heretofore held it to be a safe and reasonable rule, that where patentable novelty has been denied by all of the expert tribunals of the Patent Office, it is incumbent upon one appealing therefrom to make out a clear case of error in order to obtain a reversal. *In re Barratt*, 11 App. D. C. 177, 179; *In re Smith's Appeal*, 14 App. D. C. 181.

That rule is particularly applicable to this case, which, for its satisfactory determination, requires technical knowledge of an abstruse art that can only be acquired through thorough training.

Disclaiming the possession of such knowledge, and considering, with all the care possible under the limitation, the able argument on behalf of the appellant, as well as the reasoning of the several decisions of the Patent Office tribunals, we have been unable, possibly from the want of that knowledge, to perceive any error in the decision appealed from.

Although met by the same substantial objection from the beginning, the appellant made no effort to enlighten her contention through the aid of experts in the art of music, who might possibly have completely demonstrated the novelty and utility of her system of notation, if the claim thereto be, in fact, well founded.

In the absence of such enlightenment there arises in our minds nothing beyond a mere conjecture that the appellant's claim may have attained the dignity of invention.

The decision must therefore be affirmed. It is so ordered, and further that this decision be certified to the Commissioner of Patents, as provided by law.            *Affirmed.*