**BAYER v. RICE et al. and three other cases.**

Nos. 6140, 6141, 6285, 6286.

United States Court of Appeals for the District of Columbia.

Argued Nov. 26, 1934.

Decided Dec. 24, 1934.

No. 6140:

J. T. Newton, of Washington, D. C., for appellant.

H. H. Byrne, J. W. Guider, and E. L. Jones, all of Washington, D. C., Geo. W. Hansen, of Chicago, Ill. and Edward E. Reinhold and Don Rose, both of Pittsburgh, Pa., for appellees.

No. 6141:

H. H. Byrne, of Washington, D. C., and Edward E. Reinhold and Don Rose, both of Pittsburgh, Pa., for appellants.

J. T. Newton, J. W. Guider, and E. L. Jones, all of Washington, D. C., and Geo. W. Hansen, of Chicago, Ill., for appellees.

Nos. 6285, 6286:

H. H. Byrne, of Washington, D. C., and Edward E. Reinhold and Don Rose, both of Pittsburgh, Pa., for appellants.

J. T. Newton, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

These are proceedings under section 4915, R. S., as amended (35 USCA § 63), instituted in the Supreme Court of the District for the purpose of obtaining letters patent for the process of making a "cellular cement" as expressed in a single count as follows: "The process of forming a cellular cement which comprises forming a tenacious foam and mixing the foam with a cement."

Rice's application was filed December 21, 1922, and has been assigned to the Bubble-stone Company, a corporation.

Bayer, a resident of Denmark, filed an application in the United States Patent Office for the invention on September 8, 1923. He had filed a similar application in Denmark on September 11, 1922. His applications have been assigned to Christiani & Nielsen.

Roos filed an application for the invention in the United States Patent Office on August 20, 1924, and the application has been assigned to the United States Gypsum Company.

On the day that the Roos application was filed, the Gypsum Company filed a second application for a similar invention in the joint names of Roos & Allison, Allison having entered the employ of the company on March 15, 1924.

A four-party interference was declared, with Rice as the senior party, and Bayer, Roos, and Roos & Allison as the junior parties.

In his preliminary statement Rice alleged conception in October 1922, and reduction to practice November 15, 1922.

Bayer elected, under the provisions of the international convention and section 4887, R. S., as amended (35 USCA § 32), to rely for his dates of conception and reduction to practice on the filing date of his Danish application; that is, September 11, 1922.

Roos alleged conception June 1, 1922, and reduction to practice as of June 20, 1922.

Roos and Allison alleged conception and reduction to practice May 15, 1924. As those dates were subsequent to the filing dates of both the Bayer and Rice applications, judgment on the record was entered against the joint application.

Voluminous testimony was taken on behalf of the three parties remaining in the interference.

On May 28, 1927, the Examiner of Interferences, in a carefully prepared opinion, awarded priority of invention to Roos. He found as a fact that Roos conceived the invention and disclosed it to others as early as June 30, 1922, and that he reduced it to practice on August 23, 1922. He further found that Roos was not chargeable with concealment of the invention.

Bayer and Rice separately appealed to the Board of Appeals, and that tribunal, in a comprehensive and painstaking opinion, unanimously affirmed the decision of the Examiner of Interferences. They said: "Neither appellant attacks the holding of the Examiner of Interferences that Roos is entitled to a conception of the invention of the issue on June 30, 1922. We think Roos has clearly established a conception on this date and it will be unnecessary to further discuss it here."

Thereafter these proceedings were instituted and a lengthy trial was held. All the evidence adduced in the Patent Office proceeding was before the trial court. In addition, witnesses testified before the court. On final hearing the court, on March 6, 1933, entered its decree adjudging Roos to be the first and sole inventor of the invention in issue and authorizing the Commissioner of Patents to issue letters patent to him.

It thus appears that there has been unity of view in the tribunals below.

An action under section 4915, R. S., has the characteristics of a proceeding to set aside a judgment, "and, as such, is not to be sustained by a mere preponderance of evidence." Morgan v. Daniels, 153 U. S. 120, 124, 14 S. Ct. 772, 773, 38 L. Ed. 657. The court there observed that the proceeding is something more than a mere appeal; that it is an application to set aside the action of one of the executive departments of the government—the one charged with the administration of the patent system. The court said: "Upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the patent office is one between contesting parties as to

priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction." This ruling was expressly reaffirmed in a recent case. Radio Corp. of America v. Radio Engineering Lab., decided May 21, 1934, 293 U. S. 1, 54 S. Ct. 752, 55 S. Ct. 66, 78 L. Ed. 1453.

The ruling of the Patent Office tribunals that Roos conceived and disclosed the invention not later than June 30, 1922, is not challenged here by either Rice or Bayer. The crucial question we are called upon to determine therefore is whether under the rule announced in Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657, the Patent Office tribunals and the court below were right in ruling that Roos had reduced the invention to practice in August of 1922.

■ The claim of the issue originated in the Rice application and will, therefore, be interpreted in the light of that application. In an interference proceeding a claim must be given the broadest interpretation it will reasonably support. "In other words, if a party claims an invention broadly, he ought not to be permitted, when thrown into interference, to meet the exigencies of such a situation by insisting upon limitations not expressed in his claims." Humiston v. Voorhees, 57 App. D. C. 344, 23 F.(2d) 765, 766; McChesney v. Gerrard & Wright, 57 App. D. C. 138, 18 F.(2d) 180; Jeffery v. Locke, 56 App. D. C. 345, 13 F.(2d) 316.

Counsel for Rice in their brief and in argument have proceeded on the theory that the claim of the issue is hedged about with limitations. In fact, it is as broad as language can make it, and so was intended by Rice, who in his specification said that "the invention consists principally in a method of impregnating cement while in a dry or soft state with gas bubbles preferably produced by whipping a gelatinous substance in the presence of water into a foam or lather. The bubbles thus formed mix readily with the cement and occupy space within the same and in this respect may be described as taking the place of gravel or rock now commonly used in the mixing of concrete in addition to sand. My mixture would preferably comprise *suitable proportions of portland cement, sand, and foam,* although, of course, gravel may be added if desired. In referring to cement or portland cement I wish to state that this expression is intend-

ed to include clay, magnesite, plaster of paris, keiselguhr, and similar materials. The preferred form in which the principle of my invention may be executed will be described in the following specification, but it should be remembered that various changes or modifications may be made within the scope of the claims hereto attached without departing from the spirit of the invention. (Italics ours.)

"My invention comprises principally a mixture of portland cement and gas bubbles. The portland cement or clay or magnesite or any other equivalent is preferably mixed with sand either in the presence of water or in a dry state. The gas bubbles are preferably produced by whipping a gelatine mixture of preferably the following proportions: 1% glue; 98⅘% water; ⅕ of 1% formalin (containing 48% formaldehyde)."

In "Remarks" accompanying the application, it is stated: "The present case is not concerned in the method or manner of producing the foam but rather in the process of forming a cellular cement by mixing a tenacious foam with a cement, and furthermore the invention is independent of the materials forming the foam."

It is apparent that when Rice filed his application he was of the view that its only novelty resided in the disclosure of "forming a tenacious foam and mixing the foam with a cement." The evidence discloses that partition tile made from gypsum, as well as wall board made from gypsum, had been used commercially for years prior to the making of this invention. Of course, concrete blocks were still older. The evidence also discloses that cellular gypsum and cellular cement were known to the art. The patent to Sanford, No. 230151, dated July 20, 1880, covers a cellular gypsum product wherein the cellular structure is produced by means of a chemical reaction occurring in situ. The Luttgen patent, No. 845365, February 26, 1907, discloses a process of making a cementitious product filled with air spaces. The patent describes a plaster of paris or gypsum plastic mass that is subjected to a plurality of air jets which inflate the mass so that it is filled with air bubbles.

The method of producing a tenacious foam was not novel, and Rice in his specification expressly disclaims novelty in that respect.

We think it apparent that given a tenacious foam and a cement the desired weights of tile may be controlled by the volume of

foam used. As stated by the Examiner of Interferences, "Necessarily, some experimentation would be required in the case of any process to determine the most satisfactory proportions of the particular starting materials used in any given case."

As already stated, the ruling of the Patent Office tribunals that Roos conceived and disclosed the invention not later than June 30, 1922, is not challenged. That disclosure was complete and satisfactory, and was established by both documentary and other evidence. In August following the conception of the invention, Roos and a Mr. Leimer prepared several standard 4-inch partition tile according to the process of the issue. The evidence discloses that these tile were made in accordance with Roos' disclosure and were given the usual factory tests, and the data obtained was recorded and is in evidence. On the day following, two more standard 4-inch tile were made and tested. Besides the documentary evidence, several witnesses, apparently men of character and intelligence, testified concerning the making of the tests. We have no hesitation, particularly under the rule announced in Morgan v. Daniels, in accepting the finding of the lower tribunals on this point. The evidence concerning reduction to practice is of the same character and probative value as that concerning conception and disclosure.

■ Having reduced the invention to practice before either of the other parties entered the field, Roos will be entitled to a patent unless he secreted or abandoned the invention, or was induced to action by knowledge of the activity of others. Pyzel v. Black, 58 App. D. C. 16, 24 F.(2d) 281; Rolfe v. Kaisling, 32 App. D. C. 582; Gaisman v. Gillette, 36 App. D. C. 440; Hubbard v. Berg, 40 App. D. C. 577; Aufiero v. Monnot, 46 App. D. C. 297; Kotaro Honda v. Brace, 58 App. D. C. 24, 24 F.(2d) 466. The tribunals below have resolved these issues in favor of Roos, and, we think, properly. Upon reducing the invention to practice, Roos was confronted with the problem of providing machinery for the production of tenacious foam on the large scale required in the commercial exploitation of the invention. While Rice contends that such machinery could have been purchased, the evidence does not support such contention; indeed, it is in evidence that Rice, himself, on October 26, 1926, filed an application and was later granted Patent No. 1753429 on a foam-producing machine. Roos' employer

and assignee, the Gypsum Company, was a manufacturer of wall board on a very large scale, and it is apparent that makeshift machinery would not have answered its purpose.

Within two years from Roos' reduction to practice of the invention, he had perfected a foam-producing machine with a capacity of approximately one hundred gallons of foam solution per hour. That machine was made to synchronize with the company's existing machinery for the continuous production of wall board at the rate of 250,000 square feet in twenty-four hours. The commercial production of wall board embodying the invention commenced in June 1924, and down to the time of the taking of the testimony 3,000,000,000 square feet of such wall board, having a sales value of $75,000,000 had been manufactured. These figures are indicative of the problem confronting Roos in the exploitation of his invention.

Rice contends that the fact that the Gypsum Company, during the period following the reduction to practice of the invention in issue and its commercial exploitation, filed applications on similar inventions, indicates abandonment or secretion of the invention in issue. In our view the fact that the invention in issue was the only one to be exploited negatives such a conclusion. Moreover, the various applications to which Rice alludes were open to the inspection of the Patent Office tribunals and they were in a better position to judge as to their pertinency than are we.

Rice further contends that evidence he produced in the court below raises the inference that even if Roos did reduce the invention to practice in August of 1922, he subsequently suppressed it and was induced to file an application for patent with the knowledge that others had entered the field. See Mason v. Hepburn, 13 App. D. C. 86. An examination of this so-called "new evidence" discloses that it is cumulative in character and in no sense new. The record discloses that every contention now urged was advanced before the Patent Office tribunals. In our view, the evidence before the court below did not justify, much less compel, a conclusion different from that reached by the court.

■ During the progress of the case in the Patent Office, Roos and Bayer entered into a cross license agreement. This agreement, counsel for Roos and Bayer disclosed to the tribunals of the Patent Office. Rice now contends that upon the execution of this

agreement the case becomes moot. In Colman et al. v. Hathaway et al. (D. C.) 285 F. 602, 604, a similar situation obtained. In its opinion the court said: "It may not be enough to protect the real inventor that the plaintiff corporation now owns the respective rights of both Colman and Hathaway. A patent issued to the wrong party would not avail against infringers. The statute (section 4915) expressly contemplates that in such proceedings there may be 'no opposing party.' * * *" In the present case, there being three parties, there is an actual conflict between each of the two parties to the cross license agreement and the third party Rice.

 Rice introduced in evidence the March 10, 1924, issue of "Chemical Abstracts," a publication of the American Chemical Society. In that issue appears an abstract of the Bayer British patent, and because Roos and the United States Gypsum Company were subscribers to the publication Rice urges that it must be held that they saw the allusion to Bayer's British patent and therefore were stirred to activity. Roos denied having read the abstract or having had any knowledge of the Bayer patent until the declaration of the interference. In view of their denial, the fact that Roos and his employer, the Gypsum Company, were subscribers to and receivers of "Chemical Abstracts" was not sufficient to establish Rice's contention. Lincoln v. Wright, 23 Pa. 76, 62 Am. Dec. 316; American Fire Insurance Company of Philadelphia v. Landfare et al., 56 Neb. 482, 76 N. W. 1068. But even assuming that Roos read and understood the abstract from the Bayer patent, that would not, of itself, be sufficient to prove that Roos' activity in developing his invention was caused by knowledge thus obtained. We are of the view the evidence indicates that Roos not only did not suppress his invention, but that he was actively engaged on March 10, 1924, the date of this issue of Chemical Abstracts, in developing and perfecting machinery for the exploitation of the invention.

 On February 28, 1934, Rice filed in the court below a petition for leave to file a bill of review, on the ground of newly discovered evidence (Appeals Nos. 6285 and 6286). The petition was filed nine years after the declaration of the interference, five and one-half years after Rice had filed his bill of complaint, and almost a year after the entry of the final decree. The granting or refusing of such a petition rests in the discretion of the court, and the ruling of the court will not be disturbed unless there has been an abuse of discretion. Roemer v. Bernheim (Neumann), 132 U. S. 103, 10 S. Ct. 12, 33 L. Ed. 277. Not only must the petitioner account for his delay, but he must also convince the court that the alleged new evidence is so material that it would probably induce a different conclusion than that on which the former decision was based. We think the petitioner has failed in both respects. He has failed satisfactorily to account for his delay, and that alone would justify the refusal of his petition. But even assuming that it should be granted, a different conclusion on the merits would not be justified. In his petition Rice sets forth that in the Danish Patent News of April 18, 1922, a notice appeared that an application for patent, serial No. 54, was laid open for public inspection and that this application, relating to a process for the making of porous building materials, was filed on September 12, 1921, by Bayer; that the application was withdrawn September 12, 1922. It is not contended that a Danish patent was granted or issued on this withdrawn application, but it is contended that the withdrawn application constituted a disclosure of the invention in issue and therefore is a bar to the issuance of a patent to Roos. Of course, if that is so, it would also be a bar to the issuance of a patent to either Bayer or Rice. It has long been a rule in this court that a party cannot overcome the prior date of his adversary by proving that some third party was in effect the inventor. Prindle v. Brown, 24 App. D. C, 114; Marx v. Brown, 57 App. D. C. 177, 18 F. (2d) 827, 828. In the case last cited we said: "The Commissioner of Patents, as we heretofore have observed, represents the public, of which the defeated party is a member, and nothing more." But regardless of what Bayer's first Danish application disclosed, it cannot be held under the authorities that there is a statutory bar to the granting of an application for a patent to Roos. Westinghouse Machine Co. et al. v. General Electric Company et al. (C. C. A.) 207 F. 75; Milburn Co. v. Davis-Bournonville Co., 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651; Merrell-Soule Co. v. Powdered Milk Co. (C. C. A.) 222 F. 911; Barber v. Otis Motor Sales Co. (D. C.) 265 F. 675.

The decrees are affirmed with costs.