**POWER PATENTS CO. v. COE, Commissioner of Patents.**

**No. 7291.**

United States Court of Appeals for the District of Columbia.

Decided Feb. 12, 1940.

J. Hanson Boyden, of Washington, D. C., and Edmund G. Borden, of New York City, for appellant.

William Wallace Cochran and Mark Taylor, United States Patent Office, both of Washington, D. C., for appellee.

Before EDGERTON, VINSON, and RUTLEDGE, Associate Justices.

EDGERTON, Associate Justice.

This is an appeal from a decree of the District Court dismissing a bill brought under R.S. § 4915 (35 U.S.C. § 63, 35 U.S.C.A. § 63) to obtain a patent on a cyclic process for cracking oil to produce gasoline.

The present divisional application was filed by Doherty, appellant's assignor, to obtain an interference with a Taveau application which later matured into a patent. In the course of the interference, Doherty brought a timely motion to amend under Patent Office Rule 109, proposing fourteen claims as counts in the interference. He was dissolved from the interference on the ground that his application did not support the counts. He then took up, in the Patent Office, the ex parte prosecution of the

claims which he had proposed in the interference, together with some new claims which he added. The Patent Office and the District Court have rejected the claims involved in this appeal because (1) the specification does not disclose, but claims 1, 3, 12, 13, 46, 50, 51, and 52 do require, the cracking of oil vapors in a pipe still or heating zone and (2) claims 1, 2, 3, 4, 45, 46, 47, and 48 might have been, but were not, introduced in the interference and appellant is therefore estopped to assert them.

■ (1) The specification discloses that the raw oil, after being heated, is carried into a cracking chamber 36 to which no external heat is applied. Only a portion of the raw oil is cracked in its original passage through cracking chamber 36. The uncracked portion passes through pipes to a pipe still 54, referred to also as a heating coil or heating zone, where oil vapors are formed. These vapors are absorbed by a gas flowing in a parallel current. A mixture of gas, oil and vapors leaves the pipe still and flows through a separator 62. The oil and vapors are then separately introduced into the cracking chamber 36. The other features of the process need not be described here.

The specification nowhere states that vapor is cracked in the pipe still 54. It repeatedly implies the contrary. It constantly refers to chamber 36 as the cracking chamber; e. g., "The uncracked portion of the oil, together with any uncracked oil which remains in the pipe 44, after it passes downwardly through the cracking chamber, flow out through the pipe 46 to a pump 50 which forces it through a pipe 52 to a pipe still 54"; and "any desired combination of pressure and temperature may be maintained in the pipe still 54, separator 62, and cracking chamber 36." It speaks of heating the oil and vapors in the pipe still "to a cracking temperature", but it plainly indicates that heating the material to a cracking temperature may not crack it unless it is held at that temperature for a time; "The function of the cracking chamber is to provide a means by which the oil may be held at a cracking temperature for an extended period of time to permit the cracking and conversion reaction to take place." Experts testified that this is the fact. The specification states that the oil and gas pass through the pipe still at a high velocity, and it repeatedly implies that they do not reach the cracking temperature until they are passing out of the still. Thus, "at the time the oil and gas have passed through the coil of the pipe still, they are heated to a cracking temperature and the gas is saturated with vapors which are also heated to a cracking temperature"; and "The heat is supplied to the pipe still coil in a direction countercurrent to the direction of movement of the oil therein, that is, the highest temperature is developed adjacent the outlet end of the heating coil and the lowest temperature developed adjacent the inlet end of the coil. In this way, the oil and gas are gradually heated up to the cracking temperature in passing through the pipe still."

■ Notwithstanding these negations, in the specification, of the cracking of vapor in the pipe still, appellant contends that, to persons skilled in the art, the specification discloses such cracking. The specification states that "The oil leaving the cracking chamber to pass to the pipe still is heated to substantially a cracking temperature and therefore only a small amount of heat will have to be supplied in the pipe still to vaporize the oil and to provide for any heat of reaction in cracking the oil." Experts testified that the oil does not have time to cool in passing from the cracking chamber to the pipe still, and that the time it takes to pass through the still is sufficient to crack it. It has been held that if a feature is inherent in a disclosed process, the applicant may claim the feature although he does not in terms disclose it. Rogers v. Aikman, 51 App.D.C. 218, 277 F. 617; Ellis v. Shaw, 54 App.D.C. 185, 295 F. 1006; Prescott et al. v. Swain, 57 App.D.C. 306, 22 F.2d 1004. But we are not inclined to extend this principle to a case like the present, in which the language of the disclosure negatives the feature which is now claimed to inhere in it.

Experts testified that if oil is cracked in the pipe still, vapors, which are intimately mingled with the oil, will crack also; and the Patent Office has found that claims 2, 45, and 47, which require cracking of oil in the pipe still, are supported by the specification. That finding is far from being so clearly right as to justify us in asserting that the findings of which appellant complains are wrong.

■ We think the Patent Office was right in finding that claims 1, 3, 12, 13, 46, 50, 51, and 52 require the cracking of vapor in the heating zone (pipe still). The

phrases "temperature sufficient to crack a substantial portion of the same," "temperature sufficient to effect cracking thereof," "further cracking," and "resulting cracked vapors," all imply that cracking occurs. Since these phrases appear in the claims, and not in the specification, appellant's contention that the claims do not show cracking exhibits the weakness of its contention that the specification does show cracking; and vice versa.

(2) "Rule 109 permits any party to an interference, at any time within thirty days after preliminary statements have been received and approved, to file an amendment to his application, containing any claims which in his opinion should be made the basis of an interference between himself and any of the other parties. * * * If the claims are allowed, the interference will be redeclared, or other interferences will be declared, to include the new claims. The object of this rule obviously is to require the parties to an interference to have determined in that proceeding all rights growing out of their respective applications." In re Capen, 43 App.D. C. 342, 344. In general, an applicant is estopped to assert later a claim which might have been, but was not, introduced into an interference and made an issue there.[1] E. I. Du Pont De Nemours & Company v. Coe, 67 App.D.C. 42, 89 F.2d 679. The principle of estoppel does not apply to the amendment of a claim for the mere purpose of curing a defect in form. American Viscose Corporation v. Coe, 70 App.D.C. 328, 106 F.2d 849. But appellant's claims which stand rejected on the ground of estoppel are not within that principle. The character of the more important changes is shown in the attached schedule.[2] Rejected claims 1, 2, 3, 46, 47,

---

[1] Rule 116, which limits estoppel with reference to the "senior party" to an interference, was not adopted until after the present questions had arisen.

[2] Claims Rejected on Ground of Estoppel. / Derived From

| | |
|---|---|
| **1.** | **50.** |
| (Rejected also for lack of disclosure) "sufficient to crack a substantial portion of the same" [vapors and unvaporized oil]. | (Rejected for lack of disclosure) "sufficient to crack the same" [vapors and unvaporized oil]. |
| "returning portions of the heavier condensate to said heating zone to be further subjected to the cracking conditions maintained therein." | "returning portions of the heavier condensate to said heating zone to be further cracked." |
| **2.** | **51.** |
| "heating the oil constituents therein to a temperature sufficient to crack the same." | (Rejected for lack of disclosure) "heating the resulting vapors to a temperature sufficient to crack the same." |
| **3.** | **52.** |
| (Rejected also for lack of disclosure) "heating the resulting vapors and any unvaporized oil con- | (Rejected for lack of disclosure) "heating the resulting vapors to a temperature suffi- |

| | |
|---|---|
| stituents present therein while passing through said zone to a temperature sufficient to effect cracking thereof." | cient to effect cracking thereof." |
| **45.** | **7.** |
| "to a highly heated converter in which vaporization and cracking of portions of the oil occurs." This claim also refers to "both cracking operations." | "to a vapor phase converter." (It is agreed that "vapor phase" means, in the absence of liquid.) |
| **46.** | **54 (withdrawn).** |
| (Rejected also for lack of disclosure) "heating at least a portion of the condensate from the heavier vapors to a cracking temperature while passing in a continuous stream of restricted cross section through a heating zone in which vaporization occurs." | "heating the condensate from the heavier vapors to a cracking temperature to vaporize and crack the same." |
| **47.** | **55 (withdrawn).** |
| "heated to a temperature sufficient to vaporize portions thereof and | "in liquid and vapor phase." |

and 48 are based on the claims numbered 50, 51, 52, 54, 55, and 56 respectively, which were proposed counts in the interference presented by motion under Rule 109. Rejected claim 45 is an amendment of original claim 7. In each case the amendment is more than formal. Rejected claim 4 appeared in substantially its present form in the original application, but was not proposed as a count in the interference. Appellant contends that he is not now estopped to assert claim 4 because the same subject matter was presented in the interference in counts 2 and 3, now claims 50 and 51. But those claims provide for cracking oil and vapors, or only vapors, whereas claim 4 provides for cracking only oil. The difference is substantial.

■ Appellant argues that claims 1, 2, 3, 45, 46, 47, and 48 call for only partial vaporization in the heating zone, whereas Taveau specifies complete vaporization in that zone. From this it concludes that these claims are not readable on Taveau and could not have been put into interference with Taveau; and hence that it is not estopped from asserting them. International Cellucotton Products Co. v. Coe, 66 App.D.C. 248, 85 F.2d 869. The Patent Office, in finding an estoppel, has found a conflict with Taveau. We cannot say that the Office is wrong about this. Complete vaporization may well be regarded as including partial vaporization.

Rule 96 of the Patent Office provides that failure of a party to an interference to adopt a claim suggested by the examiner amounts to a disclaimer of the invention covered by the claim. Taveau never adopted proposed counts 2 and 3 of the interference, now claims 50 and 51. He did adopt proposed count 4, now claim 52, but he afterwards abandoned it. Appellant attacks the application of the doctrine of estoppel to claims 1, 2, 3, 45, 47, and 48 on the ground that Taveau has disclaimed or abandoned the subject matter of these claims in disclaiming or abandoning counts 2, 3, and 4 of the interference. But as those counts were proposed by Doherty, not suggested by the examiner, Rule 96 does not make Taveau's failure to adopt them equivalent to a disclaimer. As claims 1 and 3 have been properly rejected for lack of disclosure in the specification, we need not inquire whether appellant is estopped to assert them. Claims 2, 45, 47, and 48 relate only to the cracking of oil; while count 2 of the interference specified the cracking of both oil and vapor, and counts 3 and 4 specified only the cracking of vapor. No disclaimer or abandonment, by Taveau, of those counts of the interference can be held to extend to the materially different claims (2, 45, 47 and 48) which appellant added after the dissolution of the interference.

Affirmed.

| | | | |
|---|---|---|---|
| to crack a substantial portion of the oil constituents passing therethrough." [Refers to a second cracking zone.] | "heated to a temperature sufficient to vaporize and crack portions thereof in the vapor phase." | distillate oil is subjected to cracking conditions of temperature and pressure and in which zone portions of said distillate are vaporized." (Also refers to second cracking zone.) | phase." <br><br> "in a zone in which portions of said distillate are cracked in vapor phase." |
| 48. | 56 (withdrawn). | | |
| "through a heating zone in which the | "in liquid and vapor | | |