**DANIELS v. COE, Commissioner of Patents.**

**No. 7508.**

United States Court of Appeals for the District of Columbia.

Decided Oct. 28, 1940.

Harold T. Stowell, of Washington, D. C., for appellant.

W. W. Cochran, United States Patent Office, of Washington, D. C., for appellee.

Before MILLER, EDGERTON, and VINSON, Associate Justices.

VINSON, Associate Justice.

After the Board of Appeals in the Patent Office refused to issue Letters Patent in respect to six claims made by Rupert S. Daniels, he filed a bill of complaint in the District Court which prayed that the Patent Office be directed to grant such Letters.[1]

[1] R.S. § 4915, 35 U.S.C.A. § 63.

942

The bill was dismissed and the plaintiff appeals.

The issues presently involved can be understood only through familiarity with previous contentions made by, and adjudications affecting, the plaintiff and others working in the same field. In 1928 the plaintiff applied for a patent covering certain processes and compositions in the manufacture of moldable abrasive articles (emery wheels, for example). Later in the year one Robie made application for a patent on processes and compositions quite similar, and in 1929 one Novotny did likewise. Robie filed a continuing application in 1931, Daniels in May, 1932. As a result, an interference between the three applicants was declared in June 1932.

The subject matter for this interference was defined in four counts; the first one is representative: "1. In the manufacture of an abrasive article the steps of the process comprising mixing the abrasive grains with a liquid reactive resin, adding dry powdered reactive resin to make the mixture workable, forming the article under pressure, and hardening the bond by heating."

In this proceeding, Daniels contended that "liquid resin" within the meaning of the counts included "liquid resin plus a solvent" [described as "varnish" in his application claims]. If this was not the case, Daniels must lose, since he did not show conception and reduction to practice of a process or a composition using "liquid resin", other than with a solvent, prior to Robie. And priority is the primary question in an interference proceeding.[2]

The Interference Examiner decided, on the basis of usage, that "liquid resin" did not include "liquid resin plus a solvent". He stated that the question was close, that the difficulty arose largely because "resin" is not of definite chemical composition, like salt for example; salt water could not be described as liquid salt. He concluded that since the term "liquid resin" first appeared in a count based upon Robie's application which differentiated liquid resins and dissolved resins, since Daniels had also made the distinction in his application, and since Bakelite was at that time marketing a

product known as AR–0014 as a liquid resin, there had developed in the industry a distinction between liquid resins and dissolved resins. For the purpose of the interference counts, therefore, the Examiner decided that "liquid resin" did not include "liquid resin plus a solvent".

The plaintiff could have appealed to the Board of Appeals in the Patent Office and from there to the Court of Customs and Patent Appeals.[3] But he availed himself of none of this machinery, and now concedes that the Examiner's decision is conclusive between the parties.

Robie proceeded to secure a patent on the methods and materials described in the interference counts. The plaintiff, with amended claims, also sought Letters Patent. Six of these claims have been denied: two on the basis that since they dominate the counts involved in the interference, plaintiff is estopped; the other four on the ground that they present nothing patentably distinct from Robie's patent.

The two which are said to be readable on the counts of the interference proceeding will be considered first. Claim 49 is concerned with the method, 50 with the composition.

"Claim 49. In the manufacture of abrasive articles the steps which comprise first mixing abrasive grains with a liquid coating comprising principally synthetic resin to coat the grains therewith, and then mixing the so-coated grains with a dry powdered reactive resin to supercoat the grains and form a loose granular mixture capable of being compressed into coherent shapes and hardened by heat into strong tough structures."

"Claim 50. Moldable and heat-hardenable abrasive mixture comprising abrasive grains coated with liquid coating comprising principally synthetic resin and supercoated with a finely divided solid reactive resin of a heat-hardenable character, providing a loose granular mixture capable of being compressed into coherent shapes hardenable by heat into strong tough structures."

The relevant descriptive words in these claims are "liquid coating comprising

---

[2] II Walker, Patents (Deller's Ed. 1937) § 189; Rules of Practice, United States Patent Office, No. 93. Novotny was unable to show reduction to practice prior to Robie. It also appeared that he had not been diligent.

[3] R.S. § 4909, as amended, 44 Stat. 1336, 35 U.S.C.A. § 57; R.S. § 4911, as amended, 44 Stat. 1336, 45 Stat. 1476, 35 U.S.C.A. § 59a.

principally synthetic resin." In the interference counts the phrase was "liquid resin". The plaintiff states that claims 49 and 50 are "broad enough to embrace both the subject-matter of the counts awarded to Robie in the interference and the use of varnish as comprised in [his] earlier invention." Inasmuch as these claims do embrace the subject matter of the interference, plaintiff, as loser in that proceeding, is estopped from asserting them now.

■ An interference determination settles not only the claims made, but all that could have been presented. As was stated by this court in Blackford v. Wilder, "Having had the right to make the broader claims in the earlier stages of the proceedings in the Patent Office, as well as the opportunity, in the first proceeding, to introduce all of his evidence * * *, his right, in both respects, terminated with that litigation. Whether the former decision was right or wrong, or was induced by the want of the particular evidence that was offered in the present case, is not the question." [4]

■ The plaintiff attempts to weaken this pronouncement by noting that it was made in a second interference proceeding. But the rule is a rule of law, not merely a procedural rule of the Patent Office; [5] it is an adaptation for patent cases of the basic doctrine of res judicata, estoppel by judgment. Whether the second proceeding is an interference, [6] a reissue, [7] a suit to obtain letters patent, [8] or any other type of action, [9] the first proceeding is res judicata

on all claims that were made or could have been made therein. In truth, if plaintiff were successful in obtaining a patent on claims 49 and 50 which he himself states are broad enough to cover the subject matter of the interference, it would be the same as if he were successful in a second interference where the counts were formed in terms of his present claims and he was awarded priority.

Plaintiff argues, however, that since Robie insisted upon the narrow interpretation of the counts before the Interference Examiner, and the Examiner stated in his decision that except as to such narrow claims, Daniels was ahead of Robie, the rule of estoppel should not apply. Plaintiff also points out that Robie's superior was familiar with Daniels' work and the Patent Examiner stated that the interference counts were "broad enough to cover the use of a solvent with resins".

The Board of Appeals, while affirming the Patent Examiner's decision that plaintiff was estopped from asserting claims 49 and 50, did not so interpret the interference counts. The Interference Examiner decided that "liquid resin" did not include "liquid resin plus a solvent"; with this interpretation of the counts, he could not have "found" that plaintiff was first in the broader field. Even though Robie insisted upon the narrow interpretation of the counts as framed in that proceeding we cannot know what contentions he would have made or what evidence he would have presented if the counts had been indisputably as broad as plaintiff's claims 49 and 50.

---

[4] 28 App.D.C. 535, 551.

[5] By the Rules of the Patent Office all claims must be made before the taking of testimony in the interference and no claim may be made in the part of the application not involved in the interference that is broad enough to cover material included in that proceeding. See Rule 109. In re Capen, 43 App.D.C. 342; Power Patents Co. v. Coe, 71 App. D.C. 369, 110 F.2d 550. Rule 106: "When a part only of an application is involved in an interference, the applicant may withdraw from his application the subject matter adjudged not to interfere, and file a new application therefor, or he may file a divisional application for the subject matter involved, if the invention can be legitimately divided; *Provided*, That no claim shall be made in the application not involved in the interference broad enough to include matter

claimed in the application involved therein."

[6] Blackford v. Wilder, 28 App.D.C. 535, certiorari denied 205 U.S. 541, 27 S.Ct. 788, 51 L.Ed. 922; Cross v. Rusby, 42 App.D.C. 341.

[7] In re Marconi, 38 App.D.C. 286; In re Wasserfallen, 54 App.D.C. 367, 298 F. 826.

[8] Power Patents Co. v. Coe, 71 App.D. C. 369, 110 F.2d 550; International Cellucotton Products Co., v. Coe, 66 App.D. C. 248, 85 F.2d 869; this case distinguishes estoppel by judgment, or res judicata, and estoppel in pais.

[9] New Departure Mfg. Co. v. Robinson, 39 App.D.C. 504 [subsequent interference, different parties]; In re Brashares, Cust. & Pat.App., 74 F.2d 751 [application for patent on appeal to the Court of Customs and Patent Appeals, assignee estopped from making claims that would create an interference].

The plaintiff stresses the cases of Ex parte McCauley[10] and In re Long[11] which held that the doctrine of estoppel was inapplicable to the facts presented. In the McCauley case the winner of the preceding interference made no attempt to have the broader claim put in issue because he stood in a fiduciary relationship to the loser. In the Long case the winner of the preceding interference expressly stated that he did not make the broader claim, and moreover, such a claim was unpatentable to him because of intervening patents. No such facts are present here. In addition, in both the Mc-Cauley and Long cases, the losers of the interference had presented broad claims before the interference was declared. In the instant case, the plaintiff did not present the broad claims here involved until the interference was terminated.

We are not convinced that it was so clear that claims 49 and 50 could not have been put in issue in the interference as to excuse the plaintiff from having made such claims and insisting that they be made issues in the interference. If, on the other hand, the counts as formed for the interference were "really" broad enough to include the subject matter of claims 49 and 50, plaintiff should have appealed from the decision of the Interference Examiner.

In view of the determinations by the Patent Examiner, the Board of Appeals, and the District Court (in the language of Justice O'Donoghue) that "Plaintiff by reason of his failure to move in the interference proceeding to include claims of the scope of his claims 49 and 50 is estopped from seeking an allowance of said claims to him", we are not convinced that the general rule of estoppel should not apply to Daniels in respect to claims 49 and 50.

The other four claims are numbered 44, 46, 47, and 52. Claims 44 and 46 refer to the method, 47 and 52 to the composition.

"44. Process of preparing a composition of abrasive granules comprising film coating the abrasive granules with a varnish comprising a major portion of synthetic resin and a minor portion of added organic solvent, mixing the so-coated abrasive granules with powdered fusible heat-hardenable synthetic resin until the liquid coated abrasive granules have absorbed a sufficient outer coating of the powder to prevent them from sticking together in the absence of substantial external pressure while enabling them to cohere firmly when subjected to cold molding pressure.

"46. Process of preparing a non-sticky abrasive mixture which comprises mixing abrasive granules with a liquid coating comprising heat reactive synthetic resin in an intermediate stage thinned to a coating viscosity with organic solvent and heating to remove the solvent to provide such abrasive granules with a coating of heat-reacting synthetic resin which is non-sticky in the absence of substantial pressure but cohesive and capable of being compressed into coherent shapes hardenable by heat into strong tough structures.

"47. An abrasive molding composition comprising discrete abrasive granules having a sticky inner coating comprising varnish comprising a major portion of synthetic resin and a minor portion of added organic solvent and outer coating of powdered fusible heat-hardenable synthetic resin of sufficient thickness to prevent cohesion of the granules in the absence of substantial pressure, while enabling them to cohere firmly when subjected to cold molding pressure.

"52. Moldable and heat-hardenable abrasive mixture comprising dried abrasive grains coated with a coating comprising a dispersion in liquid of non-sticky synthetic heat-hardening resin from which the liquid has been sufficiently removed to render the mass non-sticky in the absence of pressure but capable of being shaped under compression into coherent shapes hardenable by heat into strong tough structures."

Claims 44 and 47 are distinguishable from the Robie patent in the use of a solvent with the liquid resin. Claims 46 and 52 are indefinitely drawn and are susceptible of being interpreted the same as 44 and 47. The plaintiff by his construction of 46 and 52, distinguishes the method and the material from the Robie patent in that under his claims heat is used to render the coated granules less sticky and more workable whereas under Robie's process powdered resin attains the same end.

■■ In any event, the Examiner, The Board of Appeals in the Patent Office, and the District Court have all held that claims 44, 46, 47, and 52 embody neither a method nor a material that constitutes a patentable distinction from those covered by the Robie patent. The question is one which the Patent Office is particularly qualified

---

10 37 U.S.P.Q. 648.

11 Cust. & Pat.App., 83 F.2d 458.

to answer.[12]  Moreover, as was said by this court in Abbott v. Coe, "The presumption that the Patent Office is right is reinforced, in the present case, by the presumption that the trial court is right." [13]

Upon this record we cannot say that the Patent Office and the District Court are clearly wrong in their determinations that claims 44, 46, 47, and 52 are unpatentable in light of the Robie patent.  In our view, plaintiff is estopped from making claims 49 and 50.  The judgment of the District Court dismissing plaintiff's bill of complaint must be affirmed.

Affirmed.

---

[12] Robertson v. Cooper, 4 Cir., 46 F.2d 766, 768; In re Beswick's Appeal, 16 App.D.C. 345, 350; In re Kohler, 47 App.D.C. 373; Bayer v. Rice, 64 App. D.C. 107, 75 F.2d 238; Gulf Smokeless Coal Co. v. Sutton, Steele & Steele, 4 Cir., 35 F.2d 433, 437; In re Alden, Cust. & Pat.App., 65 F.2d 136.  See Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657; General Talking Pictures Corp. v. American Tri-Ergon Corp., 3 Cir., 96 F.2d 800, 811, 812.

[13] 71 App.D.C. 195, 109 F.2d 449, 451. Any inferences based upon the Interference Examiner's opinion that these claims describe something patentably distinct from the interference counts are entitled to little weight.  That issue is never before him.