**McELRATH v. INDUSTRIAL RAYON CORPORATION et al.**

**No. 4796.**

Circuit Court of Appeals, Fourth Circuit.

Nov. 10, 1941.

L. S. Parsons, of Norfolk, Va., and Amasa M. Holcombe, of Washington, D. C. (Robert Homann on the brief), for appellant.

F. O. Richey, of Cleveland, Ohio (Leslie Nichols and W. C. Sessions, both of Cleveland, Ohio, Henry C. Riely, of Richmond, Va., and Richey & Watts, of Cleveland, Ohio, on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The patent in suit, granted to McElrath on March 18, 1930, on an application filed November 9, 1927, relates to improvements for bleaching, dyeing, washing and otherwise treating with proper liquids skeins of fibres such as cotton, wool or artificial silk. The patented structure was especially intended by the patentee for use in the artificial silk industry in which, according to the patent, experience has shown that the less the silk is handled in processing, the less injury is done. The patentee was familiar with an apparatus composed of several units in whose operation the skeins of material were manually transferred from one unit to another. He proposed an improvement consisting of mechanical means for the transfer of material and the use of a common source of power to operate the several machines in unison. The facts in regard to the origin of the patent and the nature of the invention, with special reference to the apparatus which it was designed to improve, are set out in detail in the opinion of the District Court, 35 F.Supp. 198, and with certain unimportant modifications, are accepted as correct by the patentee on this appeal. The pertinent facts may be summarized as follows:

In 1914 an Englishman named Clayton had obtained a patent in the United States, No. 1,116,242, on an "Apparatus for Liquid Treatment of Hanks of Thread, etc." This machine consisted of parallel rails spaced some five or six feet apart upon which a succession of slender cylindrical rods were placed transversely with the ends of the rods supported by the parallel rails. The rods were removable and the skeins of yarn to be treated were hung on the rods (a number on each rod) before the rods

were rested on the rails. Means were employed for moving the rods slowly along the rails, during which movement, the yarn was subjected to a continual spray from above, of the appropriate chemical solution. Means were utilized for rotation of the rods as they moved through the machine in order to spray effectively all parts of the skeins. Drip pans or tanks underneath caught the dripping chemicals.

While the Clayton machine was invented before the development of the rayon industry in America, it was well adapted for use in the rayon bleaching process. Prior to and during the year 1925, a number of these Clayton machines were in use for this purpose in the plant of the Viscose Corporation of Virginia. The bleaching process for rayon involves subjection of the yarn to five successive and different sprays; and it was the practice at the Viscose plant to align five of these machines in a row, end to end, with intervals between. In each of these machines the rayon was subjected to a different spray, and after the rods bearing the rayon had traversed a machine, they were lifted off and placed on successive machines in turn for treatment until they had been subjected to each of the required sprays. The yarn was then removed from the rods and placed in a hydro-extractor for drying. In this practice, each of the Clayton machines (or units) operated by its own motive power, and the removal of rayon from one machine to the next in order was accomplished by manual means; i. e., as the rods bearing the rayon skeins completed their movement through one machine, they were lifted by hand, carried across the short intervening space to the next unit, and placed in position for movement through that machine. In this manner the rayon passed through each of the five units.

The patent in suit was designed as an improvement upon this apparatus. Among the claims said to have been infringed by the defendant is claim No. 12, which reads as follows: "12. An apparatus comprising a plurality of machines for subjecting fibrous material to the action of liquid, each machine having means for applying said liquid and for collecting the drip separately from the other machines, and drainage space between successive machines, means for conveying said fibrous material through said machines automatically and through said apparatus, including supporting rods and means adapted to rotate said rods in opposite directions in successive machines, whereby uniform treatment of said fibrous material is secured, and common power means for operating said apparatus in unison."

It will be seen that the improvement for which the plaintiff claims invention consisted of three essential features: (1) the connecting of the separate units of Clayton's (or similar) machines to permit mechanical movement of the skein bearing rods from one unit to the other; (2) the operation of all units from a common source of power; and (3) the drainage space between the units. This conclusion is borne out not only by the patent itself, but also by the testimony of the patentee in the District Court. He broadly asserted that all bleaching machines that are continuous in their operation and have rotable rollers with drainage spaces between them, and are driven in unison, are covered by the patent. It is pointed out that claim 12 calls for four elements, that is to say, the three elements above described and in addition rotable supporting rods. The last mentioned element, however, is of little importance in considering the question of patentability because rotable rods were used and operated in the same manner in the Clayton machine and were therefore devoid of novelty.

The District Judge reached the conclusion that the patent was invalid because (1) it was anticipated by the prior art; (2) it did not originate with McElrath; and (3) it did not involve invention. Without indicating any doubt as to the other matters in controversy, we confine ourselves to a discussion of the fundamental question of patentability, since we are satisfied that no invention was involved in the McElrath disclosures. The following summary of his testimony indicates the circumstances under which he conceived the idea involved in the patent. He had had no previous experience in the rayon or any textile industry, and he had no knowledge of bleaching machines. He entered the employ of the Viscose Corporation on November 19, 1925, as a draftsman in the engineering department, and continued in this employment until March 4, 1926, when he was discharged under strained circumstances. It was at the very beginning of his employment, when he first had the opportunity to examine the bleaching apparatus in the plant, that he noticed the manual transfer of rods from

one unit to another, and conceived the idea of having this operation performed automatically by extending the rails across the intervals between units and driving all the units in unison. A few days later he disclosed his idea to a painter employed by the company, illustrating it with a pencil sketch, designated "Clayton Improvement". The painter was immediately interested and entered into an agreement with Mc-Elrath to purchase a one-half interest in the invention for $1,000. Three weeks later McElrath suggested the improvement to the chief engineer and the foreman of the machine shop and was told that it was a good idea and might possibly be tried in the plant. McElrath, however, made no drawings until several weeks after leaving the employment, when he prepared drawings for a patent application; but this was not filed until November 9, 1927. The idea, however, was not new to the Viscose Company when McElrath entered its employment; for, as we shall see, the Company had then already taken steps to install the automatic transfer and the unison drive in its plant.

Reference should be made at this point to the circumstances which gave rise to the charge of infringement of the McElrath patent by the Industrial Rayon Corporation, defendant in this case. In the early part of 1926, F. C. Niederhauser, who had been assistant manager of the plant of the Viscose Corporation at Roanoke, became manager of production of the plant of the defendant company at Cleveland. In October, 1925, during his employment at Roanoke, the officials of the plant received from the Viscose Company a drawing of a machine embodying the principles which McElrath conceived in November; and continuous drive machines were installed at Roanoke before Niederhauser left. One of the first duties assigned to him in his new position at Cleveland was to design and erect a mechanical bleaching machine, and he proceeded to construct a continuous machine with a single source of power. Louis Tenca, an employee of the defendant, was put to work on this machine and on November 8, 1928, applied for a patent subsequently assigned to the defendant, on certain mechanical improvements of the rods in the Clayton machine. As the result of this application, Patent No. 1,735,146 was issued on November 12, 1929. Therein no claim was made based on the mechanical transfer of the rods from unit to unit, or upon the operation of all the units from a single source of power, although these features were installed in the defendant's machine. Later, on March 27, 1931, McElrath gave notice to the defendant of infringement, whereupon Tenca applied for a reissue of his patent and sought to claim these features on the ground that his patent, while not claiming, had disclosed them. This step was purposely taken to bring about an interference proceeding with McElrath which subsequently took place. The Patent Office, after hearing, held that as between McElrath and Tenca, the former was entitled to priority. Reference, however, was made during the course of the proceeding to the possibility of an earlier installation of automatic machines in the Viscose plants, and the sending of the drawings to Roanoke in October, 1925.

■ The participation of the defendant in the interference proceeding, and the finding of priority in McElrath, does not estop the defendant to deny the validity of the patent or "[preclude] the court from relieving the alleged infringer and the public from the asserted monopoly when there is no invention." Paramount Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 55 S.Ct. 449, 455, 79 L.Ed. 997; Haughey v. Lee, 151 U.S. 282, 285, 14 S.Ct. 331, 38 L.Ed. 162; Automatic Racking Mac. Co. v. White Racker Co., C.C.N.D.Ill., E.D., 145 F. 643; Computing Scale Co. v. Standard Computing Scale Co., 6 Cir., 195 F. 508; Imperial Brass Co. v. Hackney, 7 Cir., 75 F.2d 689. Compare, In re Rhodes, Cust. & Pat.App., 80 F.2d 525; In re Mason, Cust. & Pat.App., 94 F.2d 220, 223, 224; Daniels v. Coe, 73 App.D.C. 54, 116 F.2d 941.

■ We proceed, therefore, to consider whether McElrath was entitled to a patent on the ground that he designed an important improvement in the machine used in the rayon industry which experienced persons in the industry had failed to discover, or whether, on the other hand, his design involved merely the exercise of mechanical skill. This is a question of fact; and since the evidence shows that a number of persons in the industry in different parts of the country had no difficulty in effecting the desired change when the need for it became apparent, the answer is that the change involved mechanical skill rather than invention. Cuno Engineering Corp. v. Automatic Devices Corp., 62 S.Ct. 37, 86 L.Ed. ——, decided November 10, 1941; Thomson Co. v. Ford

Motor Co., 265 U.S. 445, 453, 44 S.Ct. 533, 68 L.Ed. 1098; Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct.. 225, 27 L.Ed. 438; Elliott & Co. v. Youngstown Car Mfg. Co., 3 Cir., 181 F. 345; Embankment Patent Co. v. Miller, D.C.La., 8 F.Supp. 283; Ruben Condenser Co. v. Aerovox Corp., 2 Cir., 77 F.2d 266, 268; Julius Kayser & Co. v. Rosedale Knitting Co., 3 Cir., 98 F.2d 839, 840. Compare, Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523.

The evidence in the pending case shows beyond dispute that the industry had no difficulty in producing a machine involving the fundamental principles of the McElrath design, and had in fact done so before he entered the employment of the Viscose Company on November 1, 1925, and interested himself in the problem. The evidence is reviewed in the opinion of the District Court. It shows that in the rayon plants of Courtaulds, Limited, in Great Britain, the earlier process of bleaching was carried on as in Roanoke, with separate units separately driven, the manual transfer of skein-bearing rods from unit to unit, and spaced intervals to allow for drainage; but, as early as 1924, changes were made in the machine whereby the features claimed by McElrath as his invention were completely embodied; that is to say, Courtaulds, using the Clayton machine as basis, introduced the automatic transfer, the unison drive, and the drainage interval, in substantially the same manner as McElrath subsequently depicted in his patent. The Viscose Company of America is a subsidiary of the British concern, and in 1924 and the early part of 1925, received information and plans of the improved machines that had been installed by the parent organization. In May, 1925, the Viscose Company adapted the machine in use at its plant at Marcus Hook to the plans sent from England, making a change in the transfer mechanism, known as the finger transfer, which was also automatic in character. By June, 1925, the unison drive and automatic transfer had been successfully installed in one machine in this plant and it was determined to change all of the other machines accordingly. Steps were also taken by August, 1925, to make like changes in the plant at Roanoke. The District Judge found in accordance with the testimony of a number of witnesses that by late summer or early fall, one bleaching machine at Roanoke had been equipped with the automatic transfer mechanism and similar mechanism was being installed in the other machines when McElrath first came to work. No part of these changes was due in any way to any suggestion or idea advanced by McElrath after he entered the company's employ.

Moreover, early in October, 1925, the company had placed an order for a complete bleaching machine of five units constructed on the English plans with automatic transfer and continuous drive. It was actually shipped to Roanoke in February, 1926. This machine was of the type of which McElrath claims to be the inventor. We are in accord with the conclusion of the District Court that the evidence conclusively shows that these machines were put in use by the Viscose Company as the result of plans formulated by the company months before McElrath entered its employment, and were actually in course of construction when he first came to the company.

Similar changes of apparatus were made independently by other rayon manufacturers. In February, 1923, the DuPont Rayon Company put into operation at its Buffalo plant a machine through which the skeins of rayon were transferred mechanically through successive showers with drainage spaces between, and the entire machine was driven by one source of power. DuPont, however, did not rotate the skein rods but secured the same saturation of all portions of the skeins by providing rods with longitudinal grooves. The same company began operations in the spring of 1925 in its rayon plant at Old Hickory, Tennessee, with bleaching machines similar to those used at Buffalo. The Acme Artificial Silk Company of Cleveland began the manufacture of rayon in 1921 or 1922, and from the beginning used a bleaching machine in which skein-bearing rods were fed in at one end of the machine and carried successively by an endless chain mechanism through successive showers with drainage intervals. The rods were rotated in the course of their forward movement. The Manville-Jenckes Company of Rhode Island entered the rayon business and used a continuous automatic bleaching machine from the beginning of operations early in 1925. It used the so-called Brandwood machine, similar in general features to the Clayton machine in that the skein bearing rods were moved along parallel rails through the chemical sprays and were revolved in the course of

their forward movement. The apparatus was built as a continuous machine in which the rods passed mechanically through all the successive sprays. Brandwood was granted a patent No. 1,572,627 on February 9, 1926. His claims related only to the mechanical means of moving and lifting the rods, and he made no claim of invention in regard to continuous operation, stating that this was a device already used in practice.

The manufacture of rayon in the United States began in 1921, so that it is apparent that the use of continuous machines in the industry became common practice soon after the business was established. No serious difficulty in combining the earlier separate units of the Clayton machine into a unitary machine was experienced, and no one in the industry, except the relatively inexperienced patentee in this suit, supposed that a discovery involving invention had been made. The desired result was accomplished by devices that differed somewhat in detail, but in each instance the essential features upon which McElrath later based his patent were utilized. Moreover, substantially the same devices that the patent disclosed had actually been used in Great Britain in the Courtaulds plants, and had been put in course of construction in the United States by the Viscose Company before the patentee entered its employ. We are therefore in accord with the conclusion of the District Court that the patent in suit was invalid because, if for no other reason, it involved no invention, but merely the use of mechanical skill.

Affirmed.